Rachel Matteo-Boehm (SBN 195492)
rachel.matteo-boehm@bryancave.com
Roger Myers (SBN 1461640)
roger.myers@bryancave.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bryancave.com
Leila C. Knox (SBN 245999)
leila.knox@bryancave.com
BRYAN CAVE LLP
560 Mission Street, Suite 2500
San Francisco, CA  94105-2994
Telephone:  (415) 675-3400
Facsimile: (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>      Plaintiff,<br><br>vs.<br><br>Michael Planet, in his official capacity as Court Executive Officer/Clerk of the Ventura County Superior Court,<br><br>      Defendant. | Case No. CV11-08083 SJO (FMMx)<br><br>**PLAINTIFF COURTHOUSE NEWS SERVICE'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS**<br><br>Date:   April 18, 2016<br>Time:  10 a.m.<br>Judge:  Hon. S. James Otero |

Plaintiff Courthouse News Service ("CNS") submits the following Statement of Uncontroverted Facts in Support of its Motion for Summary Judgment.

## 42 U.S.C. § 1983

To prevail on its Section 1983 claim based on Defendant's violation of its First Amendment rights, CNS must establish the following elements:

(1)     Michael Planet, in his official capacity of Court Executive Officer of the Ventura County Superior Court ("Defendant"), acted under color of law; and

(2)     Defendant deprived CNS of its First Amendment rights as a result of a longstanding practice or custom, acts fairly representing official policy, or acts taken by a subordinate with delegated authority.

*Price v. Sery*, 513 F. 3d 962, 966 (9th Cir. 2008) (citing *Monell v. Dept. of Social Svs. of the City of N.Y.*, 436 U.S. 658 (1978)).

## A.     Defendant Acted Under Color of Law

| UNDISPUTED MATERIAL FACTS: | SUPPORTING EVIDENCE: |
|---|---|
| 1.   Defendant Michael Planet is, and has been since 2001, employed by the Superior Court of California, County of Ventura ("Ventura Superior") as the Court Executive Officer and Clerk. | Answer to Amended Complaint ¶ 8 (ECF Document No. 100). <br><br> Deposition of Michael Planet ("Planet Depo") at 15:18 – 17:4. [filed as Ex. 1, pp. 8 – 10 to Declaration of Jonathan Fetterly "Fetterly Decl."]. |
| 2.   As Court Executive Officer and Clerk, Mr. Planet is responsible for the administration of court records at Ventura Superior, including responding to requests by the media and/or the public for access to court records. | Planet Depo. at 17:5 – 11; 19:19 – 20:24; 24:20 – 24. [filed as Ex. 1, pp. 11, 22, 14 to Fetterly Decl.] <br><br> *See also* Cal. Rule of Court 10.610(b)&(c)(8) (duties and responsibilities of Court Executive Officer. |

1

| | |
|---|---|
| 3.  Cheryl Kanatzar is, and has been since 2006, the Deputy Executive Officer for the Ventura Superior Court, and reports directly to Defendant. | Kanatzar Depo. at 11:17 – 12:3.  [filed as Ex. 2, pp. 208 – 209 to Fetterly Decl.]<br><br>Planet Depo. at 42: 21 – 24.  [filed as Ex. 1, p. 16 to Fetterly Decl.]<br><br>Declaration of Cheryl Kanatzar ("Kanatzar Decl."), ¶ 1, Ex. 26 to Kanatzar Depo., authenticated at 15:5 – 16:14.[1] [Filed as Ex. 20, p. 967 to Fetterly Decl.; and Ex. 2, pp. 210 – 211 to Fetterly Decl.].<br><br>Kanatzar Depo. 15:5 – 16:14.  [filed as Ex. 2, pp. 210 – 211 to Fetterly Decl.] |
| 4.  As Deputy Executive Officer, Ms. Kanatzar is and was responsible for civil court processing, which includes processing of all filings within the Ventura Superior Court. | Kanatzar Decl. ¶ 1.  [filed as Ex. 20, p. 967 to Fetterly Decl.]<br><br>Kanatzar Depo. 17:5 – 24; 18:1 – 18. [filed as Ex. 2, pp. 212 – 213 to Fetterly Decl.]<br><br>*See* Planet Depo. 23:22 – 24:19 (testimony by Defendant identifying processing staff and Ms. Kanatzar in connection with his responsibilities); and 42:23 – 43:1.  [filed as Ex. 1, pp. 1 – 14 to Fetterly Decl.] |

---

[1] The Declaration of Cheryl Kanatzar was previously filed in this lawsuit by Defendant on Oct. 31, 2011 (ECF Document No. 25-2).

2

| | | |
|---|---|---|
| 5. | As Deputy Executive Officer, Ms. Kanatzar is and was responsible for overseeing the management of all of the Court Processing Assistants ("CPAs") who work in the Civil Department of Ventura Superior, including the CPAs assigned to work the public filing windows, and the new filings desks. Other than her direct reports, Ms. Kanatzar is responsible for approximately 150 court staff, including CPAs and supervisors. Court managers who report directly to Ms. Kanatzar include Kelly O'Dell, Julie Camacho and Terri White. | Kanatzar Decl. ¶ 1. [filed as Ex. 20, p. 967 to Fetterly Decl.]<br><br>Kanatzar Depo. 17:5 – 24; 30:4 – 14. [filed as Ex. 2, pp. 212, 219 to Fetterly Decl.] |
| 6. | Martha McLaughlin was a Court Program Supervisor ("CPS") in the Civil Department from 2007 – 2015, reporting directly to Ms. Camacho and Ms. White during that time. Richard Padilla was a CPS in the Records Department from January 2012 to March 2015. | McLaughlin Depo. 10:22 – 25; 15:3 – 23. [filed as Ex. 3, pp. 309 – 310 to Fetterly Decl.]<br><br>Padilla Depo. 8:12 – 18; 14:24 – 15:9. [filed as Ex. 5, pp. 451 – 452 to Fetterly Decl.] |
| 7. | Prior to 2011, Ms. Kanatzar was responsible for the records department at the Hall of Justice courthouse of Ventura Superior Court. After that date, Brenda McCormick, who is both a deputy executive officer and the court's counsel, assumed responsibility for the records department. Ms. Kanatzar continued to oversee policies and procedures in the records department together with other court personnel. | Kanatzar Depo. 18:13 – 20:15. [filed as Ex. 2, pp. 213 – 215 to Fetterly Decl.] |

**B.    Defendant Deprived CNS, Its Subscribers, And The Public Of Its First Amendment Rights As A Result Of A Longstanding Practice Or Custom, Acts Fairly Representing Official Policy, Or Acts Taken By A Subordinate <u>With Delegated Authority</u>**

| UNDISPUTED MATERIAL FACTS: | SUPPORTING EVIDENCE: |
|---|---|
| **There Is A First Amendment Right Of Access To Civil Complaints That Attaches On Receipt By A Court For Filing** | |
| 8.  CNS, a nationwide legal news service founded in 1990, specializes in news reporting on the legal record, from the date of filing new complaints through judgment and appeal. | Declaration of William Girdner ("Girdner Decl.") ¶ 2. |
| 9.  CNS covers approximately 2,600 state and federal trial and appellate courts around the nation, spanning all 50 states in the United States. | Girdner Decl. ¶¶ 13, 18. |
| 10. Nationwide, CNS employs more than 250 reporters and editors, each of whom covers one or more federal and/or state courts.  At larger courts, reporters visit the court every court day, near the end of the day, to review new civil complaints filed earlier that day and determine which ones merit coverage.  Where a court publishes new civil complaints on the internet, reporters sometimes cover the court remotely. | Girdner Decl. ¶ 5, 13.<br><br>Declaration of Ryan Abbott (Abbott Decl.") ¶¶ 10-40 (discussing CNS coverage of state and federal courts in Georgia and Pennsylvania).<br><br>Declaration of Adam Angione ("Angione Decl.") ¶¶ 9-79 (discussing CNS coverage of state and federal courts in Illinois, Ohio, New York, New Jersey, and Michigan). |

4

| | |
|---|---|
| 1 | |
| 2 | Declaration of Karina Brown ("Brown |
| 3 | Decl.") ¶¶ 4-25 (discussing CNS |
| 4 | coverage of state and federal courts in Oregon and Utah). |
| 5 | |
| 6 | Declaration of Nick Cahill ("Cahill |
| 7 | Decl.") ¶¶ 4-17 (discussing CNS |
| 8 | coverage of state and federal courts in Sacramento, California). |
| 9 | |
| 10 | Declaration of Sabrina Canfield |
| 11 | ("Canfield Decl.") ¶¶ 3-19 (discussing |
| 12 | CNS coverage of state and federal courts in Oregon and Louisiana). |
| 13 | |
| 14 | Declaration of Gina Carrano ("Carrano |
| 15 | Decl.") ¶¶ 3-10 (discussing CNS |
| 16 | coverage of the Philadelphia Court of Common Pleas). |
| 17 | |
| 18 | Declaration of Nick Divito ("Divito |
| 19 | Decl.") ¶¶ 3-23 (discussing CNS |
| 20 | coverage of state and federal courts in Nevada and New York). |
| 21 | |
| 22 | Declaration of Sergio Frez ("Frez |
| 23 | Decl.") ¶¶ 2-23 (discussing CNS |
| 24 | coverage of state and federal courts in San Diego, California). |
| 25 | |
| 26 | Declaration of Jacqueline Holness |
| 27 | ("Holness Decl.") ¶¶ 3-24 (discussing |
| 28 | CNS coverage of state and federal |

5

| | |
|---|---|
| 1 | courts in Atlanta, Georgia). |
| 2 | |
| 3 | Declaration of Rebekah Kearn ("Kearn |
| 4 | Decl.") ¶¶ 2-11 (discussing CNS |
| 5 | coverage of the Kern County Superior Court in Bakersfield, California). |
| 6 | |
| 7 | Declaration of Julianna Krolak ("Krolak |
| 8 | Decl.") ¶¶ 4-19, 38-39 (discussing CNS |
| 9 | coverage of the Ventura County Superior Court in Ventura, California). |
| 10 | |
| 11 | Declaration of Cameron Langford |
| 12 | ("Langford Decl.") ¶¶ 2-17 (discussing |
| 13 | CNS coverage of state and federal courts in Houston, Texas). |
| 14 | |
| 15 | Declaration of David Lee ("Lee Decl.") |
| 16 | ¶¶ 3-24 (discussing CNS coverage of |
| 17 | state and federal courts in Dallas, |
| 18 | Texas). |
| 19 | Declaration of Kevin Lessmiller |
| 20 | ("Lessmiller Decl.") ¶¶ 3-11 and Ex. 3 |
| 21 | thereto (discussing CNS coverage of |
| 22 | state courts in Tennessee). |
| 23 | Declaration of Christopher Marshall |
| 24 | ("Marshall Decl.") ¶¶ 3-66  (discussing |
| 25 | CNS coverage of state and federal |
| 26 | courts in California, Nevada, Hawaii, |
| 27 | and Alaska). |
| 28 | Declaration of Andrew Olesko ("Olesko |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ                          Case No. CV11-08083 SJO (FMMx)
274220.1

| | |
|---|---|
| 1 | Decl.") ¶¶ 2-19 (discussing CNS coverage of state and federal courts in Detroit, Michigan). |
| 2 | |
| 3 | |
| 4 | Declaration of Patrick Pemberton ("Pemberton Decl.") ¶¶ 3-11 (discussing CNS coverage of the San Luis Obispo County Superior Court in California). |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | Declaration of Milton Policzer ("Policzer Decl.") ¶¶ 3-7 (discussing CNS coverage of the Los Angeles County Superior Court). |
| 10 | |
| 11 | |
| 12 | |
| 13 | Declaration of Jamie Ross ("Ross Decl.") ¶¶ 3-13 (discussing CNS coverage of state and federal courts in Arizona and Colorado). |
| 14 | |
| 15 | |
| 16 | |
| 17 | Declaration of Christine Stuart ("Stuart Decl.") ¶¶ 4-17 (discussing CNS coverage of state and federal courts in Hartford, Connecticut). |
| 18 | |
| 19 | |
| 20 | |
| 21 | Declaration of David Tartre ("Tartre Decl.") ¶¶ 3-8 and Exhs. 3, 4 thereto (discussing CNS coverage of the San Francisco County Superior Court). |
| 22 | |
| 23 | |
| 24 | |
| 25 | Declaration of Christina "Madison" Venza ¶¶ 8-37 ("Venza Decl.") (discussing CNS coverage of state and federal courts in Texas, Oklahoma, and Arkansas). |
| 26 | |
| 27 | |
| 28 | |

7

| | |
|---|---|
| | Declaration of Tracey Walsh ("Walsh Decl.") ¶¶ 3-12 (discussing CNS coverage of state and federal courts in Birmingham, Alabama). |
| | Declaration of Elizabeth Warmerdam ("Warmerdam Decl.") ¶¶ 3-15 (discussing CNS coverage of the Fresno County Superior Court in Fresno, California). |
| | Declaration of Theodore Wheeler ("Wheeler Decl.") ¶¶ 3-14 (discussing CNS coverage of state and federal courts in Omaha, Nebraska). |
| | Declaration of June Williams ("Williams Decl.") ¶¶ 3-16 (discussing CNS coverage of state and federal courts in Seattle, Washington). |
| | Declaration of Molly Willms ("Willms Decl.") ¶¶ 3-22 (discussing CNS coverage of state and federal courts in Milwaukee and Green Bay, Wisconsin). |
| 11. CNS has more than 2,700 subscribers nationwide, including lawyers, law firms, law schools, law libraries, government offices, judges, news organizations, public entities, and entertainment and watchdog groups. | Girdner Decl. ¶¶ 4, 5, 7, 8. |

8

| | |
|---|---|
| 12. Numerous other media outlets also subscribe to CNS's publications, including the *Los Angeles Times* and *Wall Street Journal*, putting CNS in the position of a nationwide pool reporter. | Girdner Decl. ¶ 5.<br><br>Declaration of Robert Drechsel ("Drechsel Decl.") ¶ 45. |
| 13. CNS's website (www.courthousenews.com), which does not require a subscription to access and averages approximately just under one million visitors per month, is updated daily with staff-written articles and columns, including articles about newly filed civil complaints. | Girdner Decl. ¶¶ 11, 12 and Ex. 1 thereto.<br><br>Abbott Decl. ¶ 8 and Ex. 1 thereto.<br><br>Brown Decl. ¶ 4 and Ex. 2 thereto.<br><br>Cahill Decl. ¶ 4 and Ex. 2 thereto.<br><br>Canfield Decl. ¶ 4 and Ex. 2 thereto.<br><br>Carrano Decl. ¶ 3 and Ex. 2 thereto.<br><br>Divito Decl. ¶ 4 and Ex. 3 thereto.<br><br>Frez Decl. ¶ 5 and Ex. 3 thereto.<br><br>Holness Decl. ¶ 4.<br><br>Kearn Decl. ¶ 2 and Ex. 2 thereto.<br><br>Krolak Decl. ¶ 5 and Ex. 2 thereto. |

9

| | |
|---|---|
| | Langford Decl. ¶ 3 and Ex. 3 thereto. |
| | Lee Decl. ¶ 4. |
| | Lessmiller Decl. ¶ 4 and Ex. 2 thereto. |
| | Olesko Decl. ¶ 3 and Ex. 2 thereto. |
| | Pemberton Decl. ¶5 and Ex. 2 thereto. |
| | Policzer Decl. ¶ 3 and Ex. 2 thereto. |
| | Ross Decl. ¶ 4 and Ex. 1 thereto. |
| | Stuart Decl. ¶ 5. |
| | Tartre Decl., ¶ 3 and Ex. 2 thereto. |
| | Warmerdam Decl. ¶ 4 and Ex. 2 thereto. |
| | Wheeler Decl. ¶ 4 and Ex. 2 thereto. |
| | Williams Decl. ¶ 4 and Ex. 2 thereto. |
| | Willms Decl. ¶ 5 and Ex. 2 thereto. |
| 14. CNS's reporting has been cited as the source for news stories by media outlets such as the New York Times, the Washington Post, the ABA | Girdner Decl. ¶ 12 and Ex. 2 thereto. |
| | Krolak Decl. ¶ 5 and Ex. 3 thereto. |

10

| | |
|---|---|
| Journal, and many others. | |
| | Drechsel Decl. ¶ 45. |
| 15. CNS has several other publications, including its dingers, which alert subscribers that a new lawsuit has been filed against a particular party; its trackers, which update subscribers on developments in cases they are following; and its New Litigation Reports, which contain original, staff-written summaries of newsworthy new civil complaints within particular jurisdictions that are emailed to subscribers nightly. | Girdner Decl. ¶¶ 9, 10, 15-19, 22-23, and Ex. 3 thereto (CNS Style Manual). <br><br> Abbott Decl. ¶ 33. <br><br> Angione Decl. ¶¶ 10, 15, 20, 22, 26, 42, 66. <br> Brown Decl. ¶¶ 4-5. <br><br> Cahill Decl. ¶ 4. <br><br> Canfield Decl. ¶ 4. <br><br> Carrano Decl. ¶ 3. <br><br> Divito Decl. ¶ 3. <br><br> Frez Decl. ¶ 4. <br><br> Holness Decl. ¶ 4. <br><br> Kearn Decl. ¶ 2. <br><br> Krolak Decl. ¶ 4. <br><br> Langford Decl. ¶ 3. |

11

| | |
|---|---|
| | Lee Decl. ¶ 3. |
| | Lessmiller Decl. ¶ 4. |
| | Marshall Decl. ¶¶ 10, 19, 34, 44, 53, 60. |
| | Olesko Decl. ¶ 3. |
| | Pemberton Decl. ¶ 4. |
| | Policzer Decl. ¶ 3. |
| | Ross Decl. ¶¶ 5, 11. |
| | Stuart Decl. ¶ 5. |
| | Tartre Decl. ¶ 3. |
| | Venza Decl. ¶¶ 14, 18, 23, 26, 28, 32, 35. |
| | Walsh Decl. ¶ 4. |
| | Warmerdam Decl. ¶ 3. |
| | Wheeler Decl. ¶ 4. |
| | Williams Decl. ¶ 4. |

12

| | Willms Decl. ¶ 4. |
|---|---|
| 16. In California state courts, CNS only reports on "unlimited jurisdiction" civil complaints, in which the amount in controversy exceeds $25,000. | Girdner Decl. ¶ 9 and Ex. 3 thereto (CNS Style Manual). |
| 17. Overall, CNS publishes 122 New Litigation Reports, including some reports that cover only one court and other reports that cover a number of courts.  In California, CNS publishes 16 New Litigation Reports, which include daily coverage of new litigation filed in all four California federal district courts as well as daily coverage of numerous state superior courts. | Girdner Decl. ¶¶ 16, 17. |
| 18. Any delay in CNS's ability to review a new complaint delays CNS's ability to report on the contents of that complaint. | Girdner Decl. ¶¶ 20, 22. |
| 19. Courts across the nation have for many years provided CNS and other reporters with access to civil complaint and the complaints' exhibits on the same day those complaints are received for filing, including courts ranging from large to small, from metropolitan to rural, courts that scan new complaints on intake and those that do not, and | Girder Decl. ¶¶ 26, 28-33, 35, 36, 38-57, 59, 60 and Exs. 4, 6-9.<br><br>Abbott Decl.  ¶¶ 6-7, 10-40 and Exs. 2-6 thereto (discussing CNS coverage of state and federal courts in Georgia and Pennsylvania). |

13

| | |
|---|---|
| courts that provide e-filing as well as those that do not.  Reporters receive this same day access to complaints at various stages of the intake or docketing process, including both before and after administrative tasks associated with the intake and "processing" of the new complaints is complaint, and both before and after complaints are assigned a case number. | Angione Decl. ¶¶ 6-79 and Exs. 1-10 (discussing CNS coverage of state and federal courts in Illinois, Ohio, New York, New Jersey, and Michigan).<br><br>Brown Decl. ¶¶ 4-25 and Exs. 1, 3 thereto (discussing CNS coverage of (state and federal courts in Oregon and Utah).<br><br>Cahill Decl. ¶¶ 4-17 and Ex. 1, 3-5 thereto (discussing CNS coverage of state and federal courts in Sacramento, California).<br><br>Canfield Decl. ¶¶ 3-19 and Ex. 1 thereto (discussing CNS coverage of state and federal courts in Oregon and Louisiana).<br><br>Carrano Decl. ¶¶ 3-10 and Ex. 1 thereto (discussing CNS coverage of the Philadelphia Court of Common Pleas).<br><br>Divito Decl. ¶¶ 3-23 and Ex. 1-2 (discussing CNS coverage of state and federal courts in Nevada and New York).<br><br>Frez Decl. ¶¶ 18-23 and Ex. 2 (discussing CNS coverage of the United States District Court for the Southern District of California).<br><br>Holness Decl. ¶¶ 3-24 and Exs. 1, 2 |

14

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

thereto (discussing CNS coverage of state and federal courts in Atlanta, Georgia).

Kearn Decl. ¶¶ 2-11 and Ex. 1 thereto (discussing CNS coverage of the Kern County Superior Court in Bakersfield, California).

Langford Decl. ¶ 2-17 and Ex. 1-2, 4-6 thereto (discussing CNS coverage of state and federal courts in Houston, Texas).

Lee Decl. ¶ 3-24 and Exs. 1-2 thereto (discussing CNS coverage of state and federal courts in Dallas, Texas).

Lessmiller Decl. ¶¶ 3-11 and Ex. 1 thereto (discussing CNS coverage of state courts in Tennessee).

Marshall Decl. ¶¶ 3-66 and Exs. 3-6 thereto (discussing CNS coverage of state and federal courts in California, Nevada, Hawaii, and Alaska).

Olesko Decl. ¶¶ 2-19 and Exhs. 1, 3, 4 thereto (discussing CNS coverage of state and federal courts in Detroit, Michigan).

Pemberton Decl. ¶¶ 3-11 and Ex. 1, 3 thereto (discussing CNS coverage of the

| | |
|---|---|
| | San Luis Obispo County Superior Court in California). |
| | Policzer Decl. ¶¶ 3-7 and Ex. 1 thereto (discussing CNS coverage of the Los Angeles County Superior Court). |
| | Ross Decl. ¶¶ 3-13 and Exs. 2-3 thereto (discussing CNS coverage of state and federal courts in Arizona and Colorado). |
| | Stuart Decl. ¶¶ 4-17 and Exs. 1, 3-4 thereto (discussing CNS coverage of state and federal courts in Hartford, Connecticut). |
| | Tartre Decl. ¶¶ 3-8 and Exs. 1, 3-5 thereto (discussing CNS coverage of the San Francisco County Superior Court). |
| | Venza Decl. ¶¶ 37 and Exs. 1-5 thereto (discussing CNS coverage of state and federal courts in Texas, Oklahoma, and Arkansas). |
| | Walsh Decl. ¶¶ 3-12 and Ex. 1 thereto (discussing CNS coverage of state and federal courts in Birmingham, Alabama). |
| | Warmerdam Decl. ¶¶ 3-15 and Ex. 1 thereto (discussing CNS coverage of the Fresno County Superior Court in Fresno, California). |

16

| | |
|---|---|
| 1 | |
| 2 | Wheeler Decl. ¶¶ 3-14 and Exs. 1, 3-4 |
| 3 | (discussing CNS coverage of state and |
| 4 | federal courts in Omaha, Nebraska). |
| 5 | Williams Decl. ¶¶ 3-16 and Ex. 1 |
| 6 | (discussing CNS coverage of state and |
| 7 | federal courts in Seattle, Washington). |
| 8 | |
| 9 | Willms Decl. ¶¶ 3-22 and Ex. 1 |
| 10 | (discussing CNS coverage of state and |
| 11 | federal courts in Milwaukee and Green Bay, Wisconsin). |
| 12 | |
| 13 | Declaration of Pamela MacLean |
| 14 | ("MacLean Decl."), ¶¶ 3-11 (discussing her work covering federal courts in |
| 15 | California, Washington, Oregon, New |
| 16 | York, Alaska, Hawaii for various publications). |
| 17 | |
| 18 | Declaration of Skip Rimer ("Rimer |
| 19 | Decl."), ¶¶ 5-6 (discussing his coverage of Ventura Superior for the *Ventura* |
| 20 | *County Star-Free Press* from |
| 21 | approximately 1979-81). |
| 22 | |
| 23 | Declaration of Jeff Sturgeon ("Sturgeon |
| 24 | Decl."), ¶¶ 3-15 (discussing his coverage of Ventura Superior for the |
| 25 | *Ventura County Star-Free Press* beginning in 1988 and continuing for |
| 26 | six years, and also covering the |
| 27 | Roanoke Courthouse of the U.S. |
| 28 | District Court for the Western District |

| | |
|---|---|
| | of Virginia for the *Roanoke Times* from 2013 to the date of his declaration, March 11, 2016). Drechsel Decl. ¶ 39. |
| 20. In some courts where clerks are able to process complaints quickly, same day access is provided after processing. | Angione Decl. ¶¶ 35-36. Brown Decl. ¶ 7. Lessmiller Decl. ¶¶ 7, 10. Pemberton Decl. ¶¶ 8, 11. Venza Decl. ¶¶ 22, 30. Warmerdam Decl. ¶¶ 11-15. Wheeler Decl. ¶ 11. |
| 21. During approximately 1979-1981, and approximately 1988-1994, reporters who covered Ventura Superior could review and report on new complaints "the same day they had been received for filing by the court." | Rimer Decl. ¶ 5 ("During my time as a reporter for the Ventura County Star-Free Press, I covered the Ventura Superior Court and the Ventura Municipal Court in or around 1979 until 1981. My coverage of the Ventura Superior Court consisted of visits to the courthouse every day the court was open to the public, around noon and again between 4:00 p.m. or 4:30 p.m., to review the new civil complaints that had been received for filing by the court that same day."), ¶ 6. |

18

| | |
|---|---|
| | Sturgeon Decl. ¶¶ 5-7 ("I do not recall a single instance during the entire six-year period I covered the Ventura Superior Court that I was unable to view a complaint the same day it was received for filing as long as I was there when the court closed.") ¶¶ 8, 10. |
| 22. As technology changes in a particular court, the specific procedures for access sometimes change. | Girdner Decl. ¶¶ 26, 28, 29, 31-34, 36, 39, 40-42, 44, 45, 48-51, 53, 54, 56, 81, 89.<br><br>Abbott Decl. ¶¶ 11-19.<br><br>Angione Decl. ¶¶ 11-14, 18-19, 27-36, 38-41, 44-49, 51-54, 57-65, 67-71, 80.<br><br>Brown Decl. ¶¶ 2-7, 8-18.<br><br>Canfield Decl. ¶¶ 16-19.<br><br>Divito Decl. ¶¶ 7-11, 13-17, 18-23.<br><br>Frez Decl. ¶¶ 12-16, 20-23.<br><br>Holness Decl. ¶¶ 8-14, 15-19, 23-24.<br><br>Langford Decl. ¶¶ 10-14.<br><br>Lee Decl. ¶¶ 12-17, 21-24. |

19

| | |
|---|---|
| | Marshall Decl. ¶¶ 17-18, 21-25, 48-49. |
| | Olesko Decl. ¶¶13, 19. |
| | Policzer Decl. ¶¶ 5-7. |
| | Ross Decl. ¶ 12. |
| | Stuart Decl. ¶¶ 10-11, 17. |
| | Tartre Decl. ¶ 7. |
| | Venza Decl. ¶¶ 12-17, 21-22, 25, 30-31. |
| | Walsh Decl. ¶ 7. |
| | Warmerdam Decl. ¶¶ 10-15. |
| | Wheeler Decl. ¶¶ 7-11. |
| | Williams Decl. ¶¶ 9-10, 15-16. |
| | MacLean Decl. ¶¶ 8-9. |
| 23. At Ventura Superior, new civil unlimited complaints are deemed "filed" on the date the complaint is received by Ventura Superior – not | Kanatzar Decl. ¶ 16.  [filed as Ex. 20, p. 974 to Fetterly Decl.] |

20

| | |
|---|---|
| the date they are processed. | Declaration of Julie Camacho filed 10/31/11 ("Camacho Decl.") ¶ 9, authenticated at pp. 223:4 – 15 to Camacho Depo.[2]  [filed as Ex. 8, pp. 586,  611 – 626 to Fetterly Decl.]<br><br>McLaughlin Depo., 86:18 – 87:6.  [filed as Ex. 3, pp. 350 – 351 to Fetterly Decl.] |
| 24. At Ventura Superior, if a new complaint is processed on a date subsequent to its receipt it backdates the "filed" stamp to reflect the date on which the complaint was received. | Kanatzar Depo. 138:13-20.  [filed as Ex. 2, p. 260 to Fetterly Decl.]<br><br>Camacho Decl., ¶ 9.  [filed as Ex. 8, p. 614 to Fetterly Decl.]<br><br>McLaughlin Depo., 86:5 – 87:6.  [filed as Ex. 3, pp. 350 – 351 to Fetterly Decl.]<br><br>Defendant's Response to Interrogatory No. 1. [filed as Ex. 9, pp. 642 – 647  to Fetterly Decl.] |
| 25. Same-day access to new complaints is important to accuracy in reporting. | Girdner Decl. ¶ 64.<br><br>Drechsel Decl. ¶¶ 27-28. |
| 26. Same-day access to new complaints is important to the newsworthiness of reporting. | Girdner Decl. ¶¶ 61 – 63, 64 ("[W]hen we see an important case on the day it is filed, we can write a story and place it high on our web page "above the fold," |

---

[2] The Declaration of Julie Camacho was previously filed in this action by Defendant on Oct. 31, 2011 (ECF couemnt Dkt. # 25-1).

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

which means for a print newspaper that it is visible in a newsstand, and for an electronic page that it can be seen on the web page when it is first opened, without having to scroll down.  In my experience, when access to new complaints is withheld for a day or more, news organizations are less likely to run a story, and if they do, they are likely to play it down, where it receives less attention.").  ¶¶ 65 – 68.

Drechsel Decl. ¶ 18 ("The public thus has a strong interest in knowing about civil litigation, not at some undefined point in the future, but immediately when cases are filed and even before there is any formal court action.  The very fact that a lawsuit has been filed is of importance to the public and any number of specialized audiences, even before any official proceeding takes place.  Nor is it realistic for any entity other than the media to monitor civil filings on a systematic (and systemic) basis.  In this respect, the media inherently play a vital surrogate role for the public generally and for any specialized audiences the media may serve.")  ¶ 26 ("From the perspective of the media, delayed access can mean that cases can more easily slip through the cracks since reporters may not be able to return over and over to check on availability.")

| | |
|---|---|
| | Sturgeon Decl. ¶16<br><br>MacLean Decl. ¶ 12.<br><br>Krolak Decl. ¶¶ 32, 43 and Exs. 10 – 12, 22 – 28 thereto. |
| 27. Without same-day access to complaints, the filing party/attorney can control coverage by sharing the complaint only with preferred news outlets. | Girdner Decl. ¶¶ 65 – 67, and Ex. 10 (example of Ventura lawsuit) & Ex. 11 (example of Orange County lawsuit) thereto.<br><br>Krolak Decl. ¶ 32.<br><br>Drechsel Decl. ¶ 27.<br><br>Frez Decl. ¶ 17 and Ex. 4.<br><br>Tartre Decl. ¶¶ 8-9 and Exs. 6-7. |
| 28. The fact that a new piece of litigation is pending potentially affects a lot of people, not just the parties, and knowing about that litigation right away allows them to alter their conduct accordingly. | Drechsel Decl. ¶ 14  ("The public has an enormously important interest in civil litigation.  ….  [S]ome civil litigation has the potential to affect a great number of people in very significant ways.").<br><br>MacLean Decl. ¶ 12.<br><br>Girdner Decl. ¶ 68. |
| 29. Many reporters used to review the day's complaints, but with the enormous loss of newsroom jobs in the past 10-12 years the result is that | Girdner Decl. ¶¶ 6, 26, 28-31, 41 (identifying four publications that covered New York courts daily in addition to CNS), 42-43 (identifying |

| | |
|---|---|
| organizations like CNS play a particularly important role as monitors of the civil justice system. | four publications that covered courts in Chicago daily in addition to CNS), 44.

Drechsel Decl. ¶ 34 ("With the enormous loss of newsroom jobs in the past 10-12 years, even a large metro daily like the Milwaukee Journal Sentinel may have only one court reporter, and that person is likely to focus on criminal court.  The result is that organizations like CNS play a particularly important role as monitors of the civil justice system.  Some of the nation's largest daily newspapers now subscribe to CNS to monitor civil filings for important and newsworthy cases – a role for CNS not to be minimized.").

*See also* Girdner Decl. ¶ 41 (historically four other reporters in New York).

*See also* Girdner Decl. ¶¶ 42-43 (three other reporters in Chicago).

Angione Decl. ¶ 11 (five or six other reporters in Chicago).

See also Girdner Decl. ¶¶ 29-31, 44, 50, 60 (other courts where CNS historically worked alongside other reporters). |
| **Defendant's Practice of Curtailing Access To New Complaints Until After They Are Processed** ||
| 30. Defendant takes the position that | Planet Depo. at 73:15 – 76:4, 84:9 – |

| | |
|---|---|
| new unlimited civil complaints received at Ventura Superior are not "filed" until after they are processed. | 85:4.  [filed as Ex. 1, pp. 19 – 22, 26 – 27 to Fetterly Decl.]<br><br>*See also* Kanatzar Depo. pp. 115:7 – 16; 115:22 – 116:3.  [filed as Ex. 2, p. 245 to Fetterly Decl.] |
| 31. Defendant takes the position that new unlimited civil complaints received at Ventura Superior do not become "official court records" until after they are processed. | Defendant's Responses to Interrogatory Nos 6, 8 and 9.  [filed as Ex. 10, pp. 659 – 666 to Fetterly Decl.]<br><br>*See also* Planet Depo. 84:9 – 85:4. [filed as Ex. 1, pp. 26 – 27 to Fetterly Decl.]<br><br>*See also* Kanatzar Depo. 23:11 – 25; 112:13 – 112:20, 112:21 – 23 ("it's not a … court record until we've processed it and put it in our case management system."); 112:24 – 113:3; 140:20 – 25. [filed as Ex. 2, pp. 218, 242 – 243, 262 to Fetterly Decl.] |
| 32. Defendant takes the position that new unlimited civil complaints received at Ventura Superior are not public records until after they are processed. | Planet Depo. at 85:23 – 86:9; Ex. 17 thereto, at p. 19.  [filed as Ex. 1, pp. 27 – 28, 185]<br><br>Kanatzar Depo. at 116:15-17.  [filed as Ex. 2, p. 246 to Fetterly Decl.] |
| 33. Defendant maintains it is appropriate for the Court to deny media requests to examine newly filed complaints on the ground that the Court has not yet completed its administrative tasks associated with processing | Planet Depo. at 80:3 – 81:9 (deposition taken on Nov. 4, 2015).  [filed as Ex. 1, pp. 24 – 25 to Fetterly Decl.]<br><br>Kanatzar Depo. 139:19 – 140:25; 150:5 |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| those complaints. | – 17 (deposition taken on Nov. 18, 2015).  [filed as Ex. 2, pp. 261 – 262, 272  to Fetterly Decl.] |
| | |
| | Kanatzar Depo. 142:23-143:1 ("As I stated earlier, I don't believe it is a court case file until we have processed it, so I don't believe any member of the public has the right to view it until it is an actual court case file.").  [filed as Ex. 2, pp. 264 – 265 to Fetterly Decl.] |
| | |
| | Kanatzar Depo. 211:7-11 ("Q: You testified earlier your belief that until an unlimited civil complaint is processed, it's not a public record.  Is that [a] fair statement of your prior testimony?  A: Correct.").  [filed as Ex. 2, p. 284 to Fetterly Decl.] |
| | |
| | Defendant's Responses to Interrogatory Nos 6, 8 and 9.  (served Feb. 8, 2016, and stating that new complaints received by Ventura Superior court become official records of the court only after they are fully processed). [filed as Ex. 10, pp. 659 – 666 to Fetterly Decl.] |
| | |
| | *See also* Defendants Corrected Memorandum of Points and Authorities In Support of Motion to Dismiss, Filed on June 30, 2014, Case. No. 11-cv-08083-R-MAN (ECF Document No. # 62-1), at 19:16-19 and 21:7-9.  [filed as Ex. 1, pp. 161 – 191 to Fetterly Decl.] |

| | |
|---|---|
| | *See also* Planet Depo. 121:19 – 122:1 ant Ex. 17 thereto (Corrected Memorandum of Points and Authorities In Support of Motion to Dismiss). [filed as Ex. 1, pp. 51, 52, 161 – 191] |
| | *See also* Reporter's Transcript of Scheduling Conference, Sept. 21, 2015, at 5:9 – 10:6.  [filed as Ex. 19 to Fetterly Decl.] |
| 34. Prior to June 18, 2014, it was Defendant's practice not to allow access to new complaints until after processing. | Planet Depo. at 74:14 – 76:4; and Ex. 11 thereto [filed as Ex. 1, pp. 20 – 22, 82 to Fetterly Decl.] |
| | *See also* Kanatzar Depo. 112:13 – 23, 138:21 – 140:20, 150:5 – 17.  [filed as Ex. 2, pp. 242, 260 – 262, 272 to Fetterly Decl.] |
| | Kanatzar Decl. ¶ 21 at 11:23 – 25; and ¶ 30 at 15:19 – 22.  [filed as Ex. 20, pp. 971, 980 to Fetterly Decl.] |
| | Defendant's Response to Interrogatory No. 1. [filed as Ex. 9, pp. 642 – 647  to Fetterly Decl.] |
| | *See also* White Depo. 26:7 – 26:21; 31:2 – 17.  [filed as Ex. 6, pp. 495 – 496 to Fetterly Decl.] |
| | *See also* Padilla Depo. 64:9 – 66:21, |

| | |
|---|---|
| | 81:25 – 82:4, Ex. 93 thereto (Media Bin Procedure).  [filed as Ex. 5, pp. 463 – 466, 479 – 481 to Fetterly Decl.] |
| 35. In 2010, CNS began daily coverage at Ventura Superior and tried to work with Defendant to find mutually agreeable procedures for its report to access new civil unlimited complaints by the end of the same day those complaints were received for filing. | Girdner Decl. ¶ 71.<br><br>Marshall Decl. ¶¶ 75-77 and Ex. 11 thereto.<br><br>Krolak Decl. ¶ 16. |
| 36. On June 20, 2011, Plaintiff's counsel sent a letter to Defendant, stating in part:<br><br>"Courthouse News once again respectfully requests that the Court adopt procedures to ensure that reporters who visit the court every day (which would include but not necessarily be limited to Courthouse News) can review new unlimited civil complaints at the end of the day they are filed, even if they have not been fully processed." | Planet Depo. at 76:12 – 76:21, Ex. 12 thereto.  [filed as Ex. 1, pp. 22, 88 to Fetterly Decl.]<br><br>Girdner Decl. ¶ 71, and Ex. 13 thereto. |
| 37. On July 11, 2011, Defendant sent a letter to Plaintiff's counsel, stating in part:<br><br>"While I appreciate the Courthouse New Services' interest in same-day access, the Court cannot prioritize that access above other priorities and mandates.  Further, the Court must ensure the integrity of all filings, including new filings, **and cannot make any filings available** | Planet Depo. at 71:8 – 74:2; 76:22 – 77:8; and Ex. 11 thereto.  [filed as Ex. 1, pp. 17 – 20, 22 – 23, 82 to Fetterly Decl.]<br><br>Girdner Decl. ¶ 72, and Ex. 14 thereto. |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| | |
|---|---|
| **until the requisite processing is complete**.  We will continue to make every effort to make new filings available as early as is practicable given the demands and limited resources." <br><br> (emphasis added) | |
| 38.On December 21, 2011, Defendant sent a letter to William Girdner, stating in part: <br><br> "Enclosed is a copy of the Declaration of Cheryl Kanatzar, which we filed in opposition to Courthouse News's motion for preliminary injunction.  The declaration explains why we cannot provide the "same-day access" guarantees Courthouse News previously demanded." | Planet Depo. 88:13 – 92:2, Ex. 14 thereto, including Ex. 14-25 ("it is my understanding that the Superior Court's current practice of granting access to civil unlimited complaints after they have been processed and filed complies with California law"). [filed as Ex. 1, pp. 29 – 33, 105 – 153, to Fetterly Decl.] <br><br> Girdner Decl. ¶ 74, and Ex. 16 thereto. |
| 39.In his letter dated December 21, 2011, Mr. Planet enclosed Ms. Kanatzar's declaration and quoted the following: <br><br> "Ventura Superior Court complies with its legal mandate to 'create, maintain and preserver' official records in a manner designed to ensure their accuracy and integrity **by preventing third parties from handling or reviewing official court records until after these records have been processed and docketed into our case filing system, and placed securely in our** | Planet Depo. 88:13 – 92:2, Ex. 14 thereto.  [filed as Ex. 1, pp. 29 – 33, 105 – 153, to Fetterly Decl.] <br><br> Girdner Decl. ¶ 74, and Ex. 16 thereto. |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| | |
|---|---|
| **official files**."<br><br>(emphasis added)<br><br>The letter also stated that the enclosed Kanatzar declaration "explains why we cannot provide the 'same-day access' guarantees Courthouse News previously demanded." | |
| 40. On January 20, 2012, CNS's counsel sent a letter to Defendant's counsel, stating in part:<br><br>"If Mr. Planet is serious about resolving this dispute, then Courthouse News invites him to respond more directly and in greater detail to Courthouse News' request that it, and other credentialed members of the press, be given access to the complaints *before they are processed*. Pre-processing access relieves the Court of any obligation to expedite processing, which as noticed in Ventura Superior's papers filed in the litigation, ordinarily need not occur immediately."<br><br>The letter also stated that CNS would welcome any specific proposals from Defendant for addressing the ongoing delays while the parties continued to litigate. | Planet Depo. at 92:21 – 93:14, Ex. 15 thereto.  [filed as Ex. 1, pp. 33 – 34, 154 – 159, to Fetterly Decl.]<br><br><br>Girdner Decl. ¶ 75, and Ex. 17 thereto. |

| | |
|---|---|
| 41. CNS did not receive a response to its January 20, 2012 letter | Girdner Decl., ¶ 76. |

| | |
|---|---|
| **Defendant's Practice of Processing New Civil Complaints Received For Filing at Ventura Superior Court** | |

| | |
|---|---|
| 42. Civil complaints and other court records filed with Ventura Superior can be viewed by the public and the press in the Records Department at the Hall of Justice, which is located in Room 218 on the same floor as, and down the hall from, the Civil Department in Room 210. | Defendant's Response to Interrogatory No. 1.  [filed as Ex. 9, p. 643 to Fetterly Decl.] <br><br> Kanatzar Depo. at 18:18 – 23:10.  [filed as Ex. 2, pp. 213 – 218  to Fetterly Decl.] <br><br> Padilla Depo. 107:23 – 116:11 and  Ex. 112 thereto.  [filed as Ex. 5, pp. 468 – 470, 486 to Fetterly Decl.] <br><br> *See also* Padilla Depo. 73:3 – 75:13, Ex. 44 thereto (Ventura Superior Public File Viewing Policy, effective Aug. 23, 2013).  [filed as Ex. 5, p. 464, 473 – 477 to Fetterly Decl.] |
| 43. As of October 31, 2011, the Ventura Superior Civil Department received approximately 8 unlimited civil complaints per day. | Kanatzar Depo. 41:18 – 21.  [filed as Ex. 2, p. 220 to Fetterly Decl.] <br><br> Kanatzar Decl. ¶ 14.  [filed as Ex. 20, p. 973 to Fetterly Decl.] |
| 44. At her November 18, 2015 deposition, Ms. Kanatzar estimated that in 2012, the Ventura Superior Civil Department received | Kanatzar Depo. 45:23 – 46:3.  [filed as Ex. 2, pp. 221 – 222 to Fetterly Decl.] |

31

| | |
|---|---|
| "probably between 10 and 12" unlimited civil complaints per day. | |
| 45. At her November 18, 2015 deposition, Ms. Kanatzar testified that the Civil Department receives "between 12 and 15 civil unlimited cases per day now." | Kanatzar Depo. 45:22 – 46:3. [filed as Ex. 2, pp. 221 – 22 to Fetterly Decl.] |
| 46. Since at least November 1, 2010, most new unlimited civil complaints received by Ventura Superior Court are and have been processed at either the filing counters or the new filings desk(s) in the Civil Department. | Defendant's Response to Interrogatory No. 1. [filed as Ex. 9, p. 643 to Fetterly Decl.]<br><br>Kanatzar Depo. 49:49 – 50:24. [filed as Ex. 2, pp. 223 – 224 to Fetterly Decl.]<br><br>Kanatzar Decl. ¶¶ 14-17. [filed as Ex. 20, pp. 973 – 975 to Fetterly Decl.]<br><br>McLaughlin Depo. 65:8 – 69:4; 72:1 – 85:7; 148:5 – 151:25; and Exs. 66 ("Civil Counter New Filings – Procedure Update") and 69 ("2nd Revised Procedure Update") thereto. [filed as Ex. 3, pp. 331 – 334, 336 – 349, 438, 438-B to Fetterly Decl.] |
| 47. Since at least 2010, Ventura Superior Court has used the Court Case Management System, Version 3 ("CCMS" or "V-3") to process new complaints it receives and to maintain its docket of court filings. | Camacho Depo, Vol. 2, 165:3 – 22. [filed as Ex. 8, p. 569 to Fetterly Decl.]<br><br>Kanatzar Decl. ¶¶ 5, 14. [filed as Ex. 20, pp. 968, 973 to Fetterly Decl.] |

| | |
|---|---|
| 48. The advent of CCMS required the CPAs at Ventura Superior to enter "considerably more information," and required "a fair amount of time," to process new complaints before a file number could be generated. | Kanatzar Decl. ¶ 14, p. 8:11-16 ("advent of the CCMS filing system… require[d] our CPAs to enter **considerably more information** regarding a new complaint before a file number can be generated") (emphasis added). [filed as Ex. 20, p. 973 to Fetterly Decl.]<br><br>McLaughlin Depo. 54:1-10 (process of entering case information into CCMS is not material to whether a new unlimited civil complaint is a public record – "it just slows down the process to get it to the records department because it is all manual labor. You are entering your data.  You are getting your labels.  You are assembling your folder, putting it all together.  Locating actually to records, so that all **takes a fair amount of time** of time for it to travel from here to here.") (emphasis added).  [filed as Ex. 3, p. 325 to Fetterly Decl.]<br><br>*See also* Camacho Depo. 169:11 – 171:8 (Using CCMS "**took longer**" than the prior system, CATS) (emphasis added).  [filed as Ex. 8, pp. 570 – 572 to Fetterly Decl.] |
| 49. Ventura Superior Court requires the following steps to process a new civil complaint using CCMS:<br><br>(1) a CPA reviews the documents to determine that the complaint is being filed in the correct court and the documents necessary to initiate | Kanatzar Depo. 87:9 – 88:18 and Ex. 30 thereto ("Case Initiation – Civil Complaints").  [filed as Ex. 2, pp. 231 – 232, 425 – 431 to Fetterly Decl.]<br><br>McLaughlin Depo. 63:13-65:7 and Ex. |

| | |
|---|---|
| the case are presented with the correct filing fee or fee waiver; | 30 thereto (same).  [filed as Ex. 3, pp. 329 – 331 to Fetterly Decl.] |
| (2) the CPA enters all the required case information to "create" a new case in CCMS; | Defendant's Response to Interrogatory No. 1.  [filed as Ex. 9, p. 643 to Fetterly Decl.] |
| (3) all accompanying instruments (i.e., checks, etc.) are entered and the receipt has been generated; | Defendant's Responses to Interrogatory Nos 6, 8 and 9.  [filed as Ex. 10, pp. 659 – 666 to Fetterly Decl.] |
| (4) any summons is issued; | |
| (5) the documents are "Filed" stamped; | *See also* Kanatzar Depo. 51:6 – 53:9 (describing processing of new complaints using CCMS.  [filed as Ex. 2, pp. 225 – 227 to Fetterly Decl.] |
| (6) the labels are generated from CCMS and placed on the physical case file, along with entering the date the complaint is filed, the courtroom assignment, and case destruction stamp; and | |
| (7) the documents are placed in a physical case file. | *See also* Camacho Depo., Vol. 1, 45:3 – 47:2 (same).  [filed as Ex. 7, pp. 538 – 540 to Fetterly Decl.] |
| | *See also* McLaughlin Depo., 148:5 – 151:25 (same).  [filed as Ex. 3, pp. 396 – 399 to Fetterly Decl.] |
| 50. As part of entering the required case information in CCMS, CPAs "locate" the complaint in CCMS by using a drop down field to enter the location of where the complaint will be routed after processing is completed. | McLaughlin Depo. 90:10 – 92:21 (describing process of "locating" complaints in CCMS); Ex. 30 at p. 6 ("Case Initiation – Civil Complaints"). [filed as Ex. 3, pp. 354 – 356, 425 - 431 to Fetterly Decl.] |

34

| | |
|---|---|
| 51. As part of entering the required case information in CCMS, CPAs were required to enter attorney information, which sometimes required creation and entry of information not already in the CCMS system. | McLaughlin Depo. 142:4 – 144:10. [filed as Ex. 3, pp. 391 – 393, 425 – 431 to Fetterly Decl.] |
| 52. During the between November 2010 and June 18, 2014, unless there were required to first go to a judge, new unlimited civil complaints were to be "located" (in CCMS) to a media bin in the records department by the CPAs who processed them, and then routed to that media bin for viewing by the public. | McLaughlin Depo. 163:2 – 164:9 and Ex. 31 thereto.  [filed as Ex. 3, pp. 400 – 401, 434 – 444 to Fetterly Decl.]  McLaughlin Depo. 171:13 – 173:6 and Ex. 70 thereto.  [filed as Ex. 3, pp. 408 – 410, 439 – 440 to Fetterly Decl.]  Padilla Depo. 64:9 – 66:18 and Ex. 93 thereto.  [filed as Ex. 5, pp. 462 – 463, 479 – 481 to Fetterly Decl.] |
| 53. In deposition, the manager who prepared Defendant's evidence disputing Plaintiff's delays in the Camacho Deposition, when asked if she confirmed whether the complaints that were "located to Media Bin" on CCMS actually made it to the media bin that day, testified: "No. There's no way I could have done that, because it was months later." | Camacho Depo., Vol. 2,  223:16 – 234:24.  [filed as Vol. 8, pp. 586 – 587 to Fetterly Decl.] |
| 54. Clerks who were newly-assigned to the new filings desk were subject to quality control review, which consisted of a supervisor's review of | Defendant's Responses to Interrogatory Nos 11.  [filed as Ex. 10, pp. 666 – 667 to Fetterly Decl.] |

35

| | |
|---|---|
| the clerk's entry of data into CCMS and confirmation that documents were signed and stamped correctly. | McLaughlin Depo. at 94:7 – 101:19 (describing quality control review process).  [filed as Ex. 3, pp. 358 – 365 to Fetterly Decl.]

*See also* Kanatzar Depo. 83:14 – 84:16 (new filings desk is where "most new clerks learn").  [filed as Ex. 2, pp. 229 – 230 to Fetterly Decl.]

*See also* Kanatzar Depo. at 133:1 – 134:18 (quality control process was meant to review the creation of a file to make sure it is accurate before it is distributed outside of the Civil Department).  [filed as Ex. 2, pp. 257 – 258 to Fetterly Decl.]

*See also* Kanatzar Depo. 125:6 – 126:16 (describing quality control).  [filed as Ex. 2, pp. 253 – 254 to Fetterly Decl.]

*See also* McLaughlin Depo. at 55:9 – 57:25 (testifying that the civil department had goal of keeping CPAs at the new filings desk for only six months before moving them to another desk).  [filed as Ex. 3, pp. 326 – 328 to Fetterly Decl.] |
| 55. CPAs assigned to the new filings desk were rotated frequently and subject to quality control review for varying periods of time, lasting for | Kanatzar Depo. 84:5 – 14; 126:17 – 23. [filed as Ex. 2, pp. 230, 254 to Fetterly Decl.] |

| | | |
|---|---|---|
| 1 | several weeks to several months. | Camacho Depo., Vol. 1,  57:3 – 61:23. [filed as Ex. 7, pp. 541 – 545 to Fetterly Decl.] |
| 2 | | |
| 3 | | |
| 4 | | Camacho Depo., Vol. 2, 209:15 – 212:16, Ex. 63 thereto.  [filed as Ex. 8, pp. 583A – 583A, 626A – 626B to Fetterly Decl.] |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | McLaughlin Depo. at 94:7 – 101:19 (testifying CPAs could be subject to quality control review for anywhere from four to six weeks).  [filed as Ex. 3, pp. 358 – 365 to Fetterly Decl.] |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | McLaughlin Depo. at 55:9 – 57:25 (testifying that the civil department had goal of keeping CPAs at the new filings desk for only six months before moving them to another desk).  [filed as Ex. 3, pp. 326 – 328 to Fetterly Decl.] |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | 56. Quality control review of new complaints took place after the complaints were processed and "located" to the media bin, but before they were actually routed to the media bin. | McLaughlin Depo. 129:2 – 130:16. [filed as Ex. 3, pp. 385 – 386 to Fetterly Decl.] |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | *See also* Kanatzar Depo. 200:21-25; 201:1 – 11.  [filed as Ex. 2, pp. 181 – 182 to Fetterly Decl.] |
| 23 | | |
| 24 | | |
| 25 | | *See also* Camacho Depo. 89:9 – 97:14. [filed as Ex. 7, pp. 554 – 562 to Fetterly Decl.] |
| 26 | | |
| 27 | | |
| 28 | 57. The quality control process could | Kanatzar Decl. ¶ 34. [filed as Ex. 20, |

| | |
|---|---|
| take one to several days to complete. | pp. 982 – 983 to Fetterly Decl.] |
| | McLaughlin Depo. at 94:7 – 106:5; *see id.* 104:20-25 ("Q: … [D]o you recall any instances when you were supervising civil where quality control on new unlimited civil complaints took one to several days?  A: I think so because we were backlogged and we were short staffed.").  [filed as Ex. 3, pp. 358 – 370 to Fetterly Decl.] |
| 58. Complaints could stack up on clerk's and/or supervisors' desks awaiting quality control review. | McLaughlin Depo. at 104:8 – 106:5.  [filed as Ex. 3, pp. 368 – 370 to Fetterly Decl.] |
| 59. New unlimited civil complaints processed by CPAs who were subject to quality control review would not go to the media bin until after the quality control process had been completed, which included correcting any clerical errors. | Kanatzar Decl. ¶ 34.  [filed as Ex. 20, pp. 982 – 983 to Fetterly Decl.]<br><br>McLaughlin Depo. at 94:7 – 106:5; 139:3 – 142:3.  [filed as Ex. 3, pp. 358 – 370, 388 – 391 to Fetterly Decl.] |
| 60. New complaints received for filing at Ventura Superior Court are not always processed on the same day they are received for filing. | Camacho Depo., Vol. 2, 221:23 – 222:19 and  Ex. 168 thereto (status report dated Feb. 27, 2012, showing 5 new complaints at filing counter 9 waiting to be processed, the oldest of which was received by Ventura Superior on February 9, 2012). [filed as Ex. 8, pp. 584 – 585, 633 – 635 to Fetterly Decl.]<br><br>White Depo at 21:7 – 25:18 and Ex. 113 thereto (status report dated June 4, 2012 identifying 10 new complaints at filing |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| | |
|---|---|
| | counter 8 waiting to be processed, the oldest of which was received by Ventura Superior on May 23, 2012). [filed as Ex. 6, pp. 490 – 494, 513 – 516 to Fetterly Decl.]<br><br>McLaughlin Depo. 39:13 – 41:8 and Ex. 62 thereto (Email dated 03/18/2013 stating "status report showed the oldest date of the new filings as 3/6/13"). [filed as Ex. 3, pp. 316 – 318, 437 to Fetterly Decl.]<br><br>Stipulation Re: Authenticity of Status Reports and Memorandum.  [filed as Ex. 17 to Fetterly Decl.]<br><br>*See also* Kanatzar Decl. ¶ 16. [filed as Ex. 20, p. 974 to Fetterly Decl.] |
| 61. New unlimited civil complaints that were "located to the media bin" in CCMS were not always actually in the media bin. | Kanatzar Depo. 200:7 – 18.  [filed as Ex. 2, p. 282 to Fetterly Decl.]<br><br>*See* Camacho, Vol. 1, 118:15 – 119:16 [filed as Ex. 7, pp. 563 – 564 to Fetterly Decl.]<br><br>*See* McLaughlin Depo. 93:7 – 94:5. [filed as Ex. 3, pp. 357 – 358 to Fetterly Decl.]<br><br>*See* McLaughlin Depo. at 129:2 – 131:21 (documents "located" to media |

bin might not actually be there due to quality control review or human error). [filed as Ex. 3, pp. 385 – 387 to Fetterly Decl.]

*See* McLaughlin Depo. 112:11 – 115:12 and Ex. 46 thereto (documents that were "filed" and "located" to "records or media bin" were waiting for "quality control").  [filed as Ex. 3, pp. 371 – 374, 436 to Fetterly Decl.]

*See* McLaughlin Depo. 115:9 – 119:13, and Ex. 43 thereto (same).  [filed as Ex. 3, pp. 374 – 378, 435 to Fetterly Decl.]

*See also* Exs. 43 and 46 as authenticated by Request for Admission Nos. Nos. 28 and 33; *and* Defendant's thereto.  [filed as Ex. 11, pp. 689 – 690, 757 – 758 to Fetterly Decl.; and as Ex. 12, pp. 786 – 787 to Fetterly Dec.]

*See* Plaintiff's Request for Admission Nos. 39 – 43, Exhibits 56 – 60 thereto; *and* Defendant's Responses thereto. [filed as Ex. 11, pp. 691 – 692, 768 – 772 to Fetterly Decl.; and as Ex. 12, pp. 791 – 780 to Fetterly Decl.]

*See* Plaintiff's Request for Admission Nos. 11 – 23, and Defendant's Responses thereto. (admitting parties to emails were court employees).  [filed as Ex. 11, pp. 688 – 689 to Fetterly Decl.; and as Ex. 12, pp. 783 – 786 to Fetterly

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| | |
|---|---|
| | Decl.] |
| | *See also* Padilla Depo. 30:5 – 31:3; 32:2 – 33:17, Ex. 39 thereto (first page only). [filed as Ex. 5, pp. 455 – 466, 472 to Fetterly Decl.] |
| | *See also* Padilla Depo. 78:11 – 79:21, 82:5 – 84:15, Ex. 111 thereto.  [filed as Ex. 5, pp. 465 – 466, 485 to Fetterly Decl.] |
| 62. Ventura Superior did not maintain a record of when new unlimited civil complaints were delivered to the media bin in the records department, or who delivered them, until April 22, 2014. | Padilla Depo. 19:12 – 23:23, 41:15 – 43:9, Ex. 41 thereto (describing media bin log procedure in effect from 2012 to April 2014).  [filed as Ex. 5, pp. 453 – 454, 457 to Fetterly Decl.; and as Ex. 21, pp. 1009 – 1026 to Fetterly Decl.] |
| | Padilla Depo. 43:15 – 46:11 and Ex. 90 thereto (describing changes to media bin log in April 2014).  [filed as Ex. 5, pp. 457 – 459 to Fetterly Decl.; and as Ex. 21, pp. 1029 – 1030 to Fetterly Decl.] |
| | Padilla Depo. 46:13 – 50:15; Ex. 109 thereto (confirming April 2014 was first time the court kept track of delivery date or clerk for new complaints being delivered to media bin).  [filed as Ex. 5, pp. 458 – 459, 482 – 483). |
| | *See also* Plaintiff's Request for Admission No. 37, and Ex. 54 thereto; |

| | *and* Defendant's Response to Request for Admission No. 37 (authenticating Ex. 54). [filed as Ex. 11, pp. 691, 766 to Fetterly Decl.; and as Ex. 12, p. 790 to Fetterly Decl.] |
|---|---|
| **Delays in Access Resulting From Defendant's Practice of Not Making New Complaints Available For Viewing Until After They Are Processed** | |
| 63. During a four week from August 8 to September 2011, CNS reviewed 152 new complaints at Ventura Superior.  Of those, 28 complaints were available the court day after they were filed, 115 were not made available for review for two or more court days, with actual delays stretching up to 34 calendar days. | Krolak Decl. ¶ 20. |
| 64. After CNS commenced this lawsuit, CNS continued to experience delays of at least one court day, and often longer, in accessing new unlimited civil complaints  at Ventura Superior, including but not limited to the following:<br><br>• June 11 – 22, 2012:  0% same-day access; 55% next court day access; 45% two court days or longer to access.<br><br>• December 10 – 21, 2012: 2% same day access; 46% next court day access; 52% two court days or | Krolak Decl. ¶¶ 23 - 29 & Exs. 4-12 thereto; ¶¶ 41-44 & Exs. 18-32 thereto. |

longer to access.

- August 12 – 23, 2013: 0% same day access; 67% next day access; 33% two court days or longer to access.

- March 24 – April 4, 2014: 3% same day access; 32% next court day access; 65% two court days or longer to access.

- April 14 – 25, 2014: 14% same day access; 66% next court day access; and 20% two court days or longer to access.

- November 16 – 27, 2015: 69% same day access; 14% next calendar day access; and 17% two calendar days or longer to access. On some days, less than half of the cases were available on the day they were received.

| | |
|---|---|
| 65. Since at least 2010, CPAs at each desk in the Civil Department at the Hall of Justice prepared weekly status reports identifying the backlog of pending work to be completed from the prior week, including the number of unprocessed complaints and the date on which the oldest of them was received. | McLaughlin Depo., 33:22 – 37:10; 40:24 – 41:8; 42:6 – 16; 44:24 – 45:13; 47:13 – 48:2; 179:12 – 180:19.  [filed as Ex. 3, pp. 311 – 315, 317 – 323, 411 – 412 to Fetterly Decl.]<br><br>Status Reports and Memorandum. [filed as Ex. 15 to Fetterly Decl.]<br><br>Stipulation Re: Authenticity of Status Reports and Memorandum.  [filed as Ex. 17 to Fetterly Decl.] |

| | |
|---|---|
| 66. Since at least 2010, the Court Processing Supervisor ("CPS") in the Civil Department prepared a weekly memorandum, also called a status report, based on the status reports prepared by the Civil Department CPAs, which were delivered to the Civil Department manager. | McLaughlin Depo. 47:13 – 49:14. [filed as Ex. 3, pp. 322 – 324 to Fetterly Decl.]<br><br>Camacho Depo., Vol. 2, 174:19 – 176:21, Ex. 154 thereto (weekly status reports from supervisor show "the backlog that each staff member in the unit has from the week before or older" and is used to determine "how much backlog there is, how old it is"). [filed as Ex. 8, pp. 573 – 575 to Fetterly Decl.]<br><br>Status Reports and Memorandum. [filed as Ex. 15 to Fetterly Decl.] |
| 67. The Memorandum dated July 19, 2010 (for week ending 07/16/10) states in part:<br><br>"The civil department continues to show significant amount of backlog in new filings and judgments. However, the oldest date items are within reason per our new drop off policy."<br><br>[…]<br><br>"89 – New Complaints" with "Oldest Date: 06/10/10" at "New Filings Desk" | Camacho Depo., Vol. 2, 194:3 – 20; 199:21 – 202:1 and Ex. 160 thereto (testifying "New Complaints" on New Filings desk would include civil limited and civil unlimited complaints) [filed as Ex. 8, pp. 579, 580 – 583, 630 – 632 to Fetterly Decl.]<br><br>*See* Memorandum dated July 19, 2010 [filed as Ex. 15, p. 827 – 829 to Fetterly Decl.]<br><br>Stipulation Re: Authenticity of Status Reports and Memorandum.  [filed as Ex. 17 to Fetterly Decl.] |
| 68. The status reports and memoranda for the weeks of August 1, 2011 to September 6, 2011, identify a | Status Reports and Memorandum [filed as Ex. 15, pp. 840 – 858 to Fetterly Decl.] |

| | |
|---|---|
| backlog of "New Complaints" at Counters 8-10, and of "Other Unlimited Priority Complaints" at the New filings Desks, ranging from several days to several weeks. | *See* Planet002678, Memorandum dated August 9, 2011 (for week ending in 08/05/11) identifying "7 – 'Other' Unlimited Priority Complaints" with "Oldest Date: 08/01/11" at New Filings Desk #2, and "3 – New Complaints (from Backlog)" with "Oldest Date: 07/11/11" at Counter 8. [filed as Ex. 15, p. 845 to Fetterly Decl.]<br><br>Stipulation Re: Authenticity of Status Reports and Memorandum. [filed as Ex. 17 to Fetterly Decl.] |
| 69. The memoranda for the weeks of August 1, 2011 to September 6, 2011, show that CPA Alice Herrera "began covering the new filings desk" and was having her work quality control checked. Lisa Kozin, the "newest CPA, was assigned to the new filings desk on August 8, 2011, and her work was also quality control checked during this period. | Status Reports and Memorandum [filed as Ex. 15, pp. 840 – 858 to Fetterly Decl.]<br><br>Stipulation Re: Authenticity of Status Reports and Memorandum. [filed as Ex. 17, to Fetterly Decl.] |
| 70. Other examples of the backlog of unprocessed civil complaints identified by the status report memoranda include but are not limited to:<br><br>• Memorandum dated March 21, 2011 (for week ending 3/18/11) identifies "1 – other unlimited complaint" with "Oldest Date: 03/14/11" at the New Filings Desk.<br><br>• Memorandum dated May 9, 2011 | Status Reports and Memorandum for dates specified. [filed as Ex. 15, pp. 830 – 922 to Fetterly Decl.]<br><br>McLaughlin Depo., 33:22 – 37:10, 40:24 – 41:8, 42:6 – 16, 44:24 – 45:13, 47:13 – 48:2; 179:12 – 180:19. [filed as Ex. 3, pp. 311 – 315, 317 – 323, 411 – 412 to Fetterly Decl.]<br><br>Stipulation Re: Authenticity of Status |

45

| | |
|---|---|
| (for week ending in 5/6/11) identifies "2 – 'Other' Unlimited Priority Complaints" with "Oldest Date: 05/05/11" at the New Filings Desk.<br><br>• Memorandum dated July 25, 2011 (for week ending 07/22/11) identifies "6 – 'Other' Unlimited Priority Complaints" with "Oldest Date: 06/16/11", the funds for which were "en route from 'Simi' to file new action."<br><br>• Memorandum dated August 9, 2011 (for week ending 08/05/11) identifies "7 – 'Other' Unlimited Priority Complaints" with "Oldest Date: 08/01/11" at New Filings Desk # 2.<br><br>• Memorandum dated December 19, 2011 (for week ending 12/16/11, on which date "Civil staff were assigned to work on our new filings backlog … in an effort to reduce our year end totals").<br><br>• Memorandum dated January 9, 2012 (for week ending 01/06/12) identifies "huge backlogs of work to be processed."<br><br>• Memorandum dated February 27, 2012 (for week ending in 02/24/12) identifies "5 – New Complaints" with "Oldest Date: 02/09/12" at Counter 9.<br><br>• Memorandum dated April 4, 2012 (for week ending 03/30/12) identifies "2 – 'Other' Unlimited Priority Complaints" with "Oldest Date: 03/28/12" at New Filings | Reports and Memorandum.  [filed as Ex. 17 to Fetterly Decl.]<br><br>*See also* Camacho Depo. 221:23 – 222:19, Ex. 168 (For memorandum dated Feb. 27, 2012, "New Complaints" at Counter 9 "could be anything, any kind of new complaint").  [filed as Ex. 8, pp. 584 – 585, 633 – 635 to Fetterly Decl.]<br><br>*See also* White Depo at 21:7 – 25:18 and Ex. 113 thereto (status report dated June 4, 2012 identifying 10 new complaints at filing counter 8 waiting to be processed, the oldest of which was received by Ventura Superior on May 23, 2012).  [filed as Ex. 6, pp. 490 – 494, 514 – 516] |

Desk #1 & #2.

- Memorandum dated July 9, 2012 (for week ending 07/06/12) identifies "4 – Other Unlimited Priority complaints" with "Oldest Date: 07/02/12" at New Filings Desk #1& #2.

- Memorandum dated July 23, 2012 (for week ending 07/20/12) identifies "4 – Other Unlimited priority complaints" with "Oldest Date: 07/20/12" at New Filings Desk #1 & #2.

- Memorandum dated December 10, 2012 (for week ending 12/07/12) identifies "1 – Other unlimited priority complaint" with "Oldest Date: 12/06/12" at New Filings Desk #1 and #2.

- Memorandum dated January 28, 2013 (for week ending 01/25/13) identifies "6 – Other unlimited priority complaints" with "Oldest Date: 01/24/13" at New Filings Desk #1 & #2.

- Memorandum dated March 25, 2013 (for week ending 03/22/13), identifies "10 – Other unlimited priority complaints" with "Oldest Date: 03/21/13") at New Filings Desks

- Memorandum dated May 6, 2013 (for week ending 05/03/13) identifies "8 – Other unlimited priority complaints" with "Oldest Date: 05/02/13" at New Filings Desk #1 & #2.

- Memorandum dated May 29, 2013 (for week ending 05/24/13) identifies "4-Other unlimited priority complaints" with "Oldest Date: 05/24/13" at New Filings Desks.

- Memorandum dated June 10, 2013 (for week ending 06/07/13), identifies "7 – Other unlimited priority complaints" with "Oldest Date: 06/06/13" at New Filings Desks.

- Memorandum dated August 13, 2013 (for week ending 08/09/13) identifies "1 – Other unlimited priority complaint" with "Oldest Date: 08/06/13" at New Filings Desk.

- Memorandum dated December 2, 2013 (for week ending 11/29/13) identifies "16 – Other Unlimited priority complaints" with "Oldest Date: 11/25/13" at New Filings Desks.

- Memorandum dated December 9, 2013 (for week ending 12/06/13) identifies "8 – Other unlimited priority complaints" with "Oldest Date: 12/05/13" at New Filings Desks.

- Memorandum dated January 14, 2014 (for week ending 01/10/14) identifies "15 – Other unlimited priority complaints" with "Oldest Date: 01/08/14" at New Filings Desks.

- Memorandum dated January 27, 2014 (for week ending 01/24/14)

48

| | |
|---|---|
| identifies "9 – Other unlimited priority complaints" with "Oldest Date: 01/23/14" at New Filings Desks.<br><br>• Memorandum dated April 14, 2014 (for week ending 04/11/14) identifies "7 – Other unlimited priority complaints" with "Oldest Date: 04/10/14" at New Filings Desk #1.<br><br>• Memorandum dated April 29, 2014 (for week ending 04/25/14) identifies "6 – Other unlimited priority complaints" with "Oldest Date 04/21/14" at New Filings Desk #1. | |
| 71. Ventura Superior employees acknowledge delays in processing new filings. | Planet Depo. 88:13 – 89:11, Ex. 14 thereto (acknowledging delays of one court day that extend into longer delays).  [filed as Ex. 1, pp. 29 – 30, 105 – 153]<br><br>Kanatzar Decl. ¶¶ 29 – 34 (acknowledging delays of one to several days).  [filed as Ex. 20, pp. 980 – 983 to Fetterly Decl.]<br><br>Kanatzar Depo. 103:22 – 115:21 and Ex. 10 thereto (discussing one and two day delays).  [filed as Ex. 2, pp. 233 – 245 to Fetterly Decl.]<br><br>*See* Plaintiff's Request for Admission No. 31 and Ex. 52; *and* Defendant's Response thereto (authenticating Ex. |

49

52) (Email dated 03/15/2013 and stating: "Due to ongoing budget reductions, the Ventura Superior Court is experiencing delays in the processing of new filings[,] judgments, writs[,] abstracts, renewal of judgments and assignment of judgments that has grown from two weeks to six weeks.  The largest increase in backlogs are impacting new filings and judgments….").  [filed as Ex. 11, pp. 690, 764 to Fetterly Decl.; and as Ex. 12, p. 788 to Fetterly Decl.]

*See* Plaintiff's Request for Admission Nos. 11 – 23, and Defendant's Responses thereto. (admitting parties to emails were court employees).  [filed as Ex. 11, pp. 688 – 689 to Fetterly Decl.; and as Ex. 12, pp. 783 – 786 to Fetterly Decl.]

Marshall Decl. ¶ 76.

White Depo. 41:8 – 19; 44:17 – 45:19, 50:17 – 52:9, Exs. 115 and 117  thereto. [filed as Ex. 6, pp. 497 – 502, 521 – 523, 527 – 529 to Fetterly Decl.]

Camacho Depo., Vol. 2, 181:1 – 182:4, Ex. 154.  [filed as Ex. 8, pp. 578 – 579 to Fetterly Decl.]

*See also* Camacho Depo., Vol. 2, 194:3 – 20; 199:21 – 202:1, Ex. 160 thereto (testifying "New Complaints" on New

| | | |
|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 | | Filings desk would include civil limited and civil unlimited complaints).  [filed as Ex. 8, pp. 579, 580 – 583, 630 – 632 to Fetterly Decl.] McLaughlin Depo. 39:13 – 41:8 and Ex. 62 (Email dated 03/18/2013 stating "[t]oday civil status report showed the oldest date of the new filings as 3/6/13" and "backlog is kept to a minimum"). [filed as Ex. 3, pp. 316 – 318, 437 to Fetterly Decl.] *See also* Padilla Depo. 78:11 – 79:21, 82:5 – 84:15, Ex. 111 thereto (acknowledging delay of Ventura lawsuit referenced at ¶ 32 of Krolak Decl.).  [filed as Ex. 5, pp. 465 – 466, 485 to Fetterly Decl.] |
| 18 19 20 21 22 | 72. An unlimited civil complaint filed in Ventura Superior on January 7, 2016 was not available to be viewed in the computer terminals to which the public has access at Ventura Superior Court until January 11, 2016. | Krolak Decl., ¶ 41 and Exs. 18-20 thereto. |
| 23 24 25 26 27 28 | 73. Since at least February 2012, an exception to the practice of routing new civil complaints to the media bin would be new complaints that were routed to judicial officers, such as complaints filed with a Civil Case Cover Sheet requesting the case be deemed "complex" or CEQA cases. | Kanatzar Depo. 118:17 – 123:9 (identifying practice of routing new complaints to judges and making copies of only face pages for media bin).  [filed as Ex. 2, pp. 247 – 252 to Fetterly Decl.] McLaughlin Depo. 163:2 – 170:6 and |

| | |
|---|---|
| | Ex. 31 thereto (identifying types of complaints being routed to judges). [filed as Ex. 3, pp. 400 – 407 to Fetterly Decl.] |
| | McLaughlin Depo. 210:12 – 213:18 and Ex. 76 thereto (identifying CEQA cases as type being routed to judges). [filed as Ex. 3, pp. 420 – 423, 441 to Fetterly Decl.] |
| 74. New complaints being routed to judges were processed before being routed to them, and in the event of a processing backlog they were not given priority. | Kanatzar Depo. 119:10 – 120:9 (new complaints are not routed to judges until after processed). [filed as Ex. 2, pp. 248 – 249 to Fetterly Decl.] |
| | McLaughlin Depo. 168:19 – 170:6 (new complaints being routed to judges are not given priority in event of backlog in processing). [filed as Ex. 3, pp. 405 – 407 to Fetterly Decl.] |
| 75. When a delay of even one day occurs over a weekend or holiday, the actual delay is 3 or 4 calendar days | Girdner Decl. ¶ 63 ("A delay in access of even one court day means that news is delayed by a full news cycle. When there is an intervening weekend or holiday, or both, the delay extends up to four days."), *see also* ¶ 20. |
| | Planet Depo. 88:13 – 89:11 and Ex. 14 thereto, p. 4 (letter dated 12/21/11 acknowledging delays of one court day that extend into longer delays). [filed as Ex. 1, pp. 29 – 30, 108] |
| | *See also* Kanatzar Depo. 136:7 – 13. |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| | [filed as Ex. 2, p. 259 to Fetterly Decl.] Drechsel Decl. ¶ 28. |
|---|---|

## DEFENDANT CANNOT ESTABLISH DEFENSES TO CNS'S CLAIMS

CNS is not required to disprove Defendant's affirmative defenses in order to meet its initial burden as the moving party. However, the below addresses why Defendant cannot satisfy either of the two affirmative defenses identified by the Ninth Circuit. *See Courthouse News Service v. Planet*, 750 F.3d 776, 793, n. 9 (9th Cir. 2014) ("Planet I"); *Courthouse News Service v. Planet*, 614 Fed. App'x 912, 914 (9th Cir. 2015) (identifying compelling interest and reasonable time, place and manner restriction tests). CNS incorporates by reference Undisputed Facts 1 to 75, and the evidence cited in support of each Undisputed Fact, as set forth above.

| UNDISPUTED MATERIAL FACTS: | SUPPORTING EVIDENCE: |
|---|---|
| **Ventura Superior's Scanning Program and Consideration of Alternatives** | |
| 76. A news report of the oral argument before the Ninth Circuit Court of Appeals in this case was circulated in the Civil Department in May 2013. | Email dated May 15, 2013, with attachment (Planet001756 – Planet001761). [filed as Ex. 14 to Fetterly Decl., and ¶ 15 thereto] |
| 77. In June 2013, the Civil Department conducted a pilot program to test making scanned copies of new complaints available before processing. Although the test project in scanning the new filings went well, scanning was not implemented at that time. | Camacho Depo., Vol. 2, 246:18 – 253:6 and Ex. 169 thereto (discussing 2013 pilot program to test scanning). [filed as Ex. 8, pp. 598 – 605, 636 to Fetterly Decl.]<br><br>Memorandum dated June 17, 2013 |

| | |
|---|---|
| | ("The 'test' project in scanning the new filings went well this week."). [filed as Ex. 15, pp. 898 – 900 to Fetterly Decl.] |
| | White Depo. 147:10 – 13; 148:6 – 11; 149:12 – 22; 150:14 - 9:12. [Ex. 6, pp. 503 – 506 to Fetterly Decl.] |
| | *See also* White Depo 151:4 – 23 and Exhibit 133 thereto (discussing June 2014 pilot project to test scanning). [filed as Ex. 6, pp. 507, 531 – 532 to Fetterly Decl.] |
| | Planet Depo. 94:8 – 20 and Ex. 16 thereto. [filed as Ex. 1, pp. 39, 168 to Fetterly Decl.] |
| 78. The Ninth Circuit Court of Appeals issued its first ruling in this case on April 7, 2014 | ECF Document No. 52. |
| 79. On April 8, 2014, Mari Soto, an employee of Ventura Superior, sent an email to Julie Camacho and others suggesting "Since there are always multiple copies to conform, why doesn't the new filings clerk put a copy of the complaint in a bin at Window 14 …."<br><br>In an email dated April 9, 2014, Camacho responded to Mari Soto stating: "We have been discussing the idea of making a copy [of new complaints] or possibly having a | *See* Plaintiff's Request for Admission No. 35 and Ex. 53; and Defendant's Response thereto (authenticating Ex. 53). [filed as Ex. 11, pp. 691, 765 to Fetterly Decl.; and as Ex. 12, p. 790 to Fetterly Decl.]<br><br>*See* Plaintiff's Request for Admission No. 36 and Ex. 32; and Defendant's Response thereto (authenticating Ex. 32 to Kanatzar Depo.). [filed as Ex. 11, p. 691 to Fetterly Decl.; and Ex. 12, p. 790 to Fetterly Decl.; and Ex. 2, p. 293 to |

| | |
|---|---|
| local rule requiring the submitting party to submit an additional copy." | Fetterly Decl. (Ex. 32)] |
| | *See* Kanatzar Depo. 151:2 – 7 and Exhibit 32 thereto.  [filed as Ex. 2, pp. 273, 293 to Fetterly Decl.] |
| | *See also* Kanatzar Depo. 151:22 – 152:3; 155:15 – 19.  [filed as Ex. 2, pp. 273 – 274, 277 to Fetterly Decl.] |
| | *See* Plaintiff's Request for Admission No. 12; *and* Defendant's Response thereto (confirming Mari Soto was employee on date of email). [Filed as Exs. 11 and 12 to Fetterly Decl.] |
| 80. Ventura Superior rejected the possibility of putting a copy of new unlimited civil complaints in a bin at Window 14 of the Civil Department. | Kanatzar Depo. 154:25-155:3. *See also* Kanatzar Depo. 153:11-155:14 (declining to state in deposition the reason why Ventura Superior rejected the possibility of putting a copy of new unlimited civil complaints in a bin at Window 14 of the Civil Department, citing attorney-client privilege because it implicated communications with Brenda McCormick, who is both deputy executive officer for the records department and court counsel).  [filed as Ex. 2, pp. 275- 277 to Fetterly Decl.] |
| 81. Requiring the submitting party to submit an additional copy to be made available for the press to review meant Ventura Superior would not pay the cost of the copy. | Camacho Depo., Vol. 2, 267:14-17 ("I remember a conversation with Brenda McCormick about the possibility of creating a new local rule and having the attorneys provide the extra copy so that we weren't paying the cost of making the copy"). [filed as Ex. 8, pp. 608 – |

| | |
|---|---|
| | 609; and Ex. 11, p. 755 to Fetterly Decl.] |
| 82. Ventura Superior rejected the idea of having a local rule requiring parties to submit an extra copy of the complaint and its exhibits for the media to review. | Kanatzar Depo. 156:1-6. [filed as Ex. 2, p. 278 to Fetterly Decl.]<br><br>Camacho Depo., Vol. 2, 266:9 – 267:23 (testifying that Deputy Court Executive Officer Brenda McCormick "wasn't very fond of the idea of requiring counsel to provide the copy. Customer service-wise, she didn't think it was a good idea" to have "the attorneys provide [the] extra copy so that we weren't paying for the cost."). [filed as Ex. 8, pp. 608 – 608 to Fetterly Decl.]<br><br>*See also* Kanatzar Depo. 155:15-19 (invoking privilege as to why idea of local rule was rejected). [filed as Ex. 2, p. 277 to Fetterly Decl.] |
| 83. On April 9, 2014, the manager of the Records Department at that time, Kelly O'Dell, sent an email to the manager of the Civil Department, Terri White, suggesting:<br><br>"Can we try having Ina make copies of Complaints for cases that she doesn't locate to the Media Bin and put copies in the Media Bin?"<br><br>To which Ms. White replied: "Kelly, I'll get back with you."<br><br>The suggestion was not adopted. | Deposition of Kelly O'Dell ("O'Dell Depo") 68:10 – 70:1 and Exhibit 83 thereto. [filed as Ex. 4, pp. 444 – 446, 448 to Fetterly Decl.] |
| 84. On April 16, 2014, a meeting was | Padilla Depo. at 56:3 – 57:1, and Ex. |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| | |
|---|---|
| called in the Records Department to update staff on the issues with the Media Bin. | 110 thereto.  [filed as Ex. 5, pp. 460 – 461, 484 to Fetterly Decl.] |
| 85. On June 18, 2014, Ventura Superior adopted a scanning program whereby new civil complaints are scanned, before processing, and made available for public viewing at computer terminals located in the clerk's office. | Planet Depo. 94:8 – 20 and Ex. 16 thereto.  [filed as Ex. 1, pp. 39, 168 to Fetterly Decl.]  Defendant's Response to Interrogatory No. 1.  [filed as Ex. 9, pp. 642 – 647  to Fetterly Decl.] |

**Defendant's Justification for Prior Practice of Not Allowing Access Until After Processing**

| | |
|---|---|
| 86. Defendant and contends that his practice, prior to June 18, 2014, of not allowing access to new civil unlimited complaints before they were processed was important because of:  1) Concerns about privacy and confidentiality;  2) Concerns about accounting protocols and checks attached to complaints;  3) quality control concerns;  4) efficient administration of the court; and  5) integrity of court records. | Planet Depo. at 116:2 –126:15. [filed as Ex. 1, pp. 46 – 56 to Fetterly Decl.]  *See also* Kanatzar Depo. 139:19 – 150:23.  [filed as Ex. 2, pp. 261 – 272 to Fetterly Decl.]  *See also* Kanatzar Decl., ¶¶ 35-40. [filed as Ex. 20, pp. 983 - 984 to Fetterly Decl.] |
| 87. The Court Deputy Executive Officer, Ms. Kanatzar, testified in deposition that for civil matters, concerns about private information related to information in fee waiver applications, and information such as social security numbers, financial | Kanatzar Depo. at 140:21 – 143:1. [filed as Ex. 2, pp. 262 – 265 to Fetterly Decl.] |

| | |
|---|---|
| status and addresses. | |
| 88. Ventura Superior Court generally does not redact information from new complaints before filing them. | McLaughlin Depo. at 144:25 – 146:17. [filed as Ex. 3, pp. 393– 396 to Fetterly Decl.]<br><br>*See* Kanatzar Depo. at 141:22 – 143:12 (testifying that court redacts "mainly what would be in the fee waiver"). [filed as Ex. 2, pp. 263 – 265 to Fetterly Decl.] |
| 89. Under the Scanning Procedure, Ventura Superior Court does not review the contents of complaints for privacy concerns prior to scanning them. | Kanatzar Depo. at 143:19 – 144:9. [filed as Ex. 2, pp. 265 – 266 to Fetterly Decl.] |
| 90. The Court Deputy Executive Officer, Ms. Kanatzar, testified in deposition that to her knowledge no privacy concerns have been invaded as a result of Ventura Superior Court's practice of scanning new unlimited civil complaints and making them available for viewing prior to processing. | Kanatzar Depo. at 143:19 – 144:15. [filed as Ex. 2, pp. 265 – 266 to Fetterly Decl.] |
| 91. At his deposition, Defendant testified that he believed his concerns about privacy had been addressed by the Scanning Procedure. | Planet Depo. at 133:7-15.  [filed as Ex. 1, p. 57 to Fetterly Decl.] |
| 92. Fee waiver applications are separate documents from complaints | Request for Judicial Notice, ¶ 6 & Exh. 6. |
| 93. In many courts where reporters see complaints on the same day they are | Girdner Decl., ¶ 94. |

58

| | |
|---|---|
| submitted for filing, fee waiver applications are separated from the complaints to which they pertain before the reporter sees the complaints. | Abbott Decl. ¶¶ 12, 26, 28.<br><br>Cahill Decl. ¶ 12.<br><br>Policzer Decl. ¶ 7.<br><br>Tartre Decl. ¶ 7.<br><br>Marshall Decl. ¶ 15.<br>*See also* Kearn Decl. ¶ 6.<br><br>*See also* Willms Decl. ¶ 8. |
| 94. Ventura Superior Court has not considered the possibility of separating checks from complaints to which they are attached in order to allow reporters to see them in a more timely manner. | Kanatzar Depo. at 145:14 – 146:13. [filed as Ex. 2, pp. 267 – 268 to Fetterly Decl.] |
| 95. In his deposition, Defendant could not think of an example of a situation where there was an accounting protocol problem associated with providing access to a newly received civil unlimited complaint prior to processing. | Planet Depo. at 133:16 – 134:1. [filed as Ex. 1, pp. 57 – 58 to Fetterly Decl.] |
| 96. The scanning procedure adopted by Defendant on June 18, 2014 addressed his concerns about accounting protocol problems associated with providing access to newly received civil unlimited | Planet Depo. at 133:16-21. [filed as Ex. 1, p. 57 to Fetterly Decl.] |

| | |
|---|---|
| complaints prior to processing. | |
| 97. In many courts where reporters see complaints on the same day they are submitted for filing, checks are separated from the complaints to which they pertain before the reporter sees the complaints. | Girdner Decl., ¶¶ 57, 95.<br><br>Abbott Decl. ¶¶ 12, 26, 28.<br><br>Frez Decl. ¶ 7. |
| 98. A Court Program Supervisor responsible for quality control review testified in deposition that she could not think of a reason why members of the media could not view new complaints if they were awaiting quality control review. | McLaughlin Depo. at 121:15 – 126:16. [filed as Ex. 3, pp. 379 – 384 to Fetterly Decl.] |
| 99. Defendant testified in his deposition that his concerns regarding quality control review were addressed by the Scanning Procedure. | Planet Depo. at 135:15-18.  [filed as Ex. 1, p. 59 to Fetterly Decl.] |
| 100. In other courts, CNS reporters see complaints that may later be rejected. | Girdner Decl. ¶ 96. |
| 101. In his deposition, Defendant could not think of an example of a situation in which access to a civil unlimited complaint that had not yet been processed created efficiency problems for the court. | Planet Depo. at 135:19 – 137:1-5.  [filed as Ex. 1, pp. 59 – 61 to Fetterly Decl.]<br><br>*See also* McLaughlin Depo. at 54:1 – 10 (testifying that process of entering case information into CCMS is not material to whether a new unlimited civil complaint is a public record – "it just slows down the process to get it to the records department because it is all manual labor") .  [filed as Ex. 3, p. 325 |

60

| | |
|---|---|
| | to Fetterly Decl.] |
| 102. In his deposition, Defendant could not think of an example of a situation where providing a reporter with access to a civil unlimited complaint prior to processing resulted in the loss, destruction or mutilation of a new complaint. | Planet Depo. at 137:18 – 139:8.  [filed as Ex. 1, pp. 81 – 83 to Fetterly Decl.] |
| 103. In her deposition, the Deputy Executive Officer, Ms. Kanatzar, testified she is not aware of any situation ever in which a civil unlimited complaints submitted to Ventura Superior court for filing was lost or damages or stolen as a result of a reporter having looked at it prior to processing. | Kanatzar Depo. at 150:18 – 23.  [filed as Ex. 2, p. 272 to Fetterly Decl.] |
| 104. In many courts where reporters see complaints on the same day they are submitted for filing, courts have adopted procedures to ensure the security of complaints being reviewed by a reporter. | Girdner Decl., ¶ 92.<br><br>Angione Decl. ¶¶ 57-58, 67.<br><br>Canfield Decl. ¶ 13.<br><br>Carrano Decl. ¶ 6.<br><br>Kearn Decl. ¶¶ 3-4.<br><br>Marshall Decl. ¶¶ 11, 38.<br><br>Lee Decl., ¶¶ 7-8.<br><br>Policzer Decl. ¶¶ 4-7. |

61

| | |
|---|---|
| | Pemberton Decl. ¶¶ 9-10. |
| | Ross Decl., ¶ 7. |
| | Stuart Decl., ¶ 14. |
| | Tartre Decl. ¶¶ 4, 7. |
| | Venza Decl., ¶ 27. |
| | Warmerdam Decl., ¶¶ 6, 12. |
| | Williams Decl.  ¶ 7. |
| | MacLean Decl. ¶ 6. |
| 105. In her deposition, the Court Deputy Executive Officer, Ms. Kanatzar, testified that since the implementation of the Scanning Procedure she is not aware of any harm resulting from reporters looking at complaints prior to processing. | Kanatzar Depo. at 143:11 – 17.  [filed as Ex. 2, p. 265 to Fetterly Decl.] |
| 106. Many other courts have adopted procedures for providing same day access to new complaints, before full processing. | Girdner Decl., ¶ 26 ("I and the rest of the reporters in the press room would regularly go into the clerk's office between 4:00 and 5:00 to look over a stack of new civil complaints filed in the Central District of California, all filed in paper form.  That group included reporters for United Press International |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

("UPI"), the *Los Angeles Times*, Copley News Service, *The Orange County Register*, *Los Angeles Daily News* (the "*Daily News*") and City News Service. We reviewed a stack of new complaints filed that day, long before they were docketed.  That tradition of press access in the Central District continues into the electronic present.  The Court has adopted a form of e-filing where new complaints flow into public view on courthouse terminals or online via PACER, immediately upon receipt, even on nights and weekends, and before any court employee has taken any action with regard to the new complaint, which allows for very timely reporting."), ¶ 28 ("In 1993, I walked over to the Stanley Mosk Courthouse of what is now known as the Superior Court of California, County of  Los Angeles ("Los Angeles Superior") and began covering its new civil complaints, all filed in paper form.  Together with reporters from the *Los Angeles Times*, *Los Angeles Daily Journal*, City News Service and UPI, I checked out a cart that held that day's new civil complaints and petitions.  A court employee brought the new complaints from the intake counter in batches, including a last batch when the filing window closed at 4:30.  Reporters stayed in the records room to review the new complaints until 5:00, after the general public was asked to leave the records room at 4:30.  The complaints had not been docketed.  That tradition has been carried forward into the present.  Based on my direct supervision of CNS's Los

63

Angeles Superior reporter, and my own personal observation, I am aware that new unlimited civil complaints, still in paper form, are filed in the Stanley Mosk Courthouse and promptly scanned on the day of filing, before docketing. Reporters review the scans of new complaints through terminals in the courthouse press room.").

Girdner Decl. ¶¶ 28-33, 35-38, 40-46, 48, 50-51, 53-60.

Abbott Decl. ¶¶ 12-20, 28-30, 38-40.

Angione Decl. ¶¶ 12-3, 17-19, 21, 23, 31, 38, 40-41, 44-45, 51, 54, 57-59, 61, 69-70, 74, 78.

Brown Decl. ¶¶ 12, 17, 22.

Cahill Decl. ¶¶ 8, 10, 15.

Canfield Decl. ¶¶ 7, 10-11, 17, 18.

Carrano Decl. ¶ 9.

Divito Decl. ¶¶ 10-11, 21.

Frez Decl. ¶¶20-22.

Holness  Decl. ¶¶7, 9-14, 17-19, 22-24.

| | |
|---|---|
| | Kearn Decl., ¶¶ 6-9. |
| | Lee Decl. ¶¶ 9-10. |
| | Marshall Decl. ¶¶ 13, 17, 21-25, 32. |
| | Olesko Decl., ¶ 7, 13, 16, 19. |
| | Policzer Decl., ¶¶ 4-6. |
| | Stuart Decl. ¶ 9-11, 15- 17. |
| | Tartre Decl., ¶¶ 5-7 and Ex. 3. |
| | Venza Decl. ¶¶ 13, 16, 29, 34, 37. |
| | Walsh Decl. ¶¶ 7, 10-11. |
| | Warmerdam Decl. ¶ 7-9. |
| | Wheeler Decl. ¶¶ 5-10, 14 and Exs. 3-4 thereto. |
| | Williams Decl. ¶ 7, 16. |
| | Willms Decl. ¶¶  8-10, 17, 21. |
| | MacLean Decl. ¶¶ 6, 9, 11. |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| **Complaints Going to Judges** |
|---|

| | |
|---|---|
| 107. The Court Deputy Executive Officer, Ms. Kanatzar, contends that "it is not possible to guarantee 'same day access' to complaints that are immediately assigned to judicial officers." | Kanatzar Decl. ¶ 33.  [filed as Ex. 20, pp. 981 – 982 to Fetterly Decl.]<br><br>*See also* Kanatzar Depo. 118:21 – 123:19 and Exh. 31 thereto. [filed as Ex. 2, pp. 247 – 252, 290 to Fetterly Decl.]<br><br>*See also* Camacho Decl. ¶ 22(d) (justifying delays in access to complaints on the basis of it being "immediately delivered to a judicial officer for review of a fee waiver that was presented with the complaints") [filed as Ex. 8, p. 617 to Fetterly Decl.] |
| 108. At Ventura Superior, complaints that are immediately assigned to judicial officers are not sent to judicial officers until after processing. | Kanatzar Depo. 119:20  - 120:24.  [filed as Ex. 2, pp. 248 – 250 to Fetterly Decl.] |
| 109. For approximately one month, in or about April 2014, Ventura Superior implemented a practice of making copies of new complaints that were not located to media bin, but this practice was discontinued. | Padilla Depo. 97:23 - 100:2 and Exhibit 92 thereto.  [filed as Ex. 5, p. 467, 478 to Fetterly Decl.] |
| 110. Deputy Executive Officer, Ms. Kanatzar, testified in deposition that Ventura Superior opted not to make copies of the complaints immediately sent to judges to be put in the media bin due to "budgetary | Kanatzar Depo. 127:23 – 128:17.  [filed as Ex. 2, pp. 255 – 256 to Fetterly Decl.] |

| | |
|---|---|
| concerns." | |
| 111. The Ventura Superior Court has not quantified the cost for copying the full versions of unlimited civil complaints before sending them to judicial officers. | Kanatzar Depo. 146:18-25.  [filed as Ex. 2, p. 268 to Fetterly Decl.] |
| 112. At other courts, reporters see complex complaints and environmental complaints before those complaints are sent to judge's chambers. | Girdner Decl. ¶ 97.<br><br>*See also* Warmerdam Decl. ¶ 9. |
| **No Alternative Means of Communication Regarding New Complaints** | |
| 113. There is no adequate or reliable way for reporters to view new complaints on the same day they are filed other than to obtain them from the courts at which they are filed. | Girdner Decl. at ¶¶ 21, 69.<br><br>Drechsel Decl. at ¶¶ 23-24, 27. |

## CNS IS ENTITLED TO BOTH DECLARATORY AND INJUNCTIVE RELIEF

CNS is entitled to a declaratory order having established Defendant violated its First Amendment Rights.  CNS is also entitled to injunctive relief if it establishes the following elements: (1) success on the merits; (2) likelihood of irreparable injury; (3) the balance of equities tip in its favor; and (4) an injunction is in the public interest. *Rosebrock v. Beiter*, 788 F. Supp. 2d 1127, 1145 (C.D. Cal. 2011).  These elements are established by the following facts.  CNS incorporates by reference Undisputed Facts 1 to 113, and the evidence cited in support of each Undisputed Fact, as set forth above.

| **UNDISPUTED MATERIAL FACTS:** | **SUPPORTING EVIDENCE:** |
|---|---|

67

25

| | |
|---|---|
| 114. Once a month as a rough average, CNS's Editor Bill Girdner fields complaints from our subscribers about late reporting once a month as asking why a new complaint was reported late. | Girdner Decl. ¶ 62.<br><br>*See also* Angione Decl., ¶ 79<br><br>*See also* Pemberton Decl., ¶ 12. |
| 115. The Scanning Procedure states in part:<br><br>"the Superior court of California, County of Ventura, is now creating electronic copies of all new civil unlimited complaints, excluding exhibits and attachments, prior to processing and filing by the Court. These electronic copies can be viewed free of charge on the public computer terminals in the public lobby of the Records Department during regular business hours from 8:00 a.m. to 3:00 p.m. daily. New civil unlimited complaints received by Civil Court Processing Assistants prior to 3:00 p.m. typically will be available for electronic viewing on the same day. Complaints received after 3:00 p.m. typically will be available for viewing the next business day."<br><br>[and]<br><br>"Scanned complaints do not constitute official records of the Court. The Court may ultimately reject for filing any complaint that does not meet applicable standards of the *California Rules of Court*. Complaints become official records of the Court only after they are | Planet Depo. 94:8 – 20 and Ex. 16 thereto. [filed as Ex. 1, pp. 35, 168 to Fetterly Decl.] |

| | |
|---|---|
| assigned a case number, stamped 'filed' and placed in the file folder." | |
| 116. Under the Scanning Procedure, the 3:00 p.m. cut-off time is determined based on when a new complaint arrives at the scanning desk in the Civil Department – not when it arrives at the courthouse. | McLaughlin Depo. at 191:14 – 194:19, 201:8 – 204:2.  [filed as Ex. 3, pp. 413 – 420 to Fetterly Decl.]<br><br>Defendant's Response to Request for Admission No. 1  [filed as Ex. 12, pp. 777 – 778 to Fetterly Decl.] |
| 117. Since the Ventura Clerk instituted his new scanning procedure, CNS has experienced delays in access to new complaints. | Krolak Decl. ¶ 41-44 & Ex. 18-32.<br><br>Central Coast Reports, Ex. 21 to Krolak Decl.<br><br>*See also* White Depo. 168:5 – 170:24, Exs. 140 and 141 thereto (describing incident where person responsible for scanning "dropped the ball", and another where two cases "did not appear to be scanned").  [Ex. 6, pp. 510 – 511, 533 – 535 to Fetterly Decl.] |
| 118. There is no rule or law preventing Defendant from changing the procedures described in the Scanning Procedure. | Planet Depo. at 114:2 – 115:12. [filed as Ex. 1, pp. 44 – 45 to Fetterly Decl.] |
| 119. Defendant has not taken the position that he will not discontinue the Scanning Procedure. | Planet Depo., 111:21 – 115:12.  [filed as Ex. 1, pp. 41 – 45 to Fetterly Decl.]<br><br>Defendant's Response to Interrogatory No. 7.  [filed as Ex. 10, pp. 662 – 663 to Fetterly Decl.] |

69

| | |
|---|---|
| 120. If Defendant had to discontinue the procedures described in the Scanning Procedure he would. | Planet Depo., 111:21 – 112:18.  [filed as Ex. 1, pp. 41 – 42 to Fetterly Decl.] |
| 121. Defendant could discontinue the Scanning Procedure if Ventura Superior Court adopted e-filing. | Planet Depo., 112:20 – 113:12.  [filed as Ex. 1, pp. 43 – 43 to Fetterly Decl.]. |
| 122. Adoption of e-filing procedures does not ensure timely access to newly filed civil complaints, but can instead delay access to them. | Abbott Decl. ¶ 14.  Angione Decl. ¶¶ 33, 48, 65, 80.  Divito Decl. ¶ 8.  Holness Decl. ¶ 8.  Lee Decl. ¶¶ 14-16.  Marshall Decl. ¶ 20.  Venza Decl. ¶ 12.  Williams Decl., ¶ 10. |
| 123. Defendant contends the court did not adopt the Scanning Procedure in response to this lawsuit or the Ninth Circuit Court of Appeals' ruling on April 7, 2014. | Planet Depo. 99:6 – 12.  [filed as Ex. 1, p. 40 to Fetterly Decl.]  *See also* Kanatzar Depo. at 179:25 – 181:9.  [filed as Ex. 2, pp. 279 – 281 to Fetterly Decl.] |

70

| | |
|---|---|
| 124. On May 23, 2014, less than one month before Defendant implemented the Scanning Procedure, Defendant sent CNS a letter offering to "implement and follow the improved access policy described in the enclosed draft notice" in exchange CNS's dismissal of its complaint with prejudice. | Letter dated May 23, 2014. [filed as Ex. 18 to Fetterly Decl.] |
| 125. In recent years, a handful of other state court clerks have taken the position that new civil complaints should not be made public until after certain administrative tasks associated with the intake of those complaints have been completed, resulting in access delays. | Girdner Decl. ¶¶ 35, 80, 82, 88, and Ex. 5 thereto.<br><br>Frez Decl. ¶¶ 6-16. |
| 126. Some of the same state court clerks who have taken the position that new civil complaints should not be made public until after certain administrative tasks associated with the intake of those complaints have been completed come from courts that adopted CCMS, including the clerks for the California Superior Court, Counties of Orange, San Diego and Sacramento. | RJN ¶ 4, 5, and Ex. 4 and 5 thereto.<br><br>Girdner Decl. ¶¶ 82 ("One of the clerks who has been most strident in the position that a complaint is not a public record until after it has been processed or formally "accepted" is Alan Carlson, the Clerk and Court Executive Officer of Orange County Superior, who I understand – based on documents produced by Mr. Planet in this lawsuit – has communicated with Mr. Planet about this lawsuit.  Like Ventura Superior, Orange County Superior was an early adopter of CCMS, and Mr. Carlson has stated to me that he does not believe the press should have access to new civil actions e-filed in his court until after they are officially "accepted" into the court's docketing system, which has created a multi-day black hole, |

CNS's Stmt. Of Uncontroverted Facts ISO MSJ
274220.1

Case No. CV11-08083 SJO (FMMx)

| | |
|---|---|
| | where a complaint has been received but is being withheld until that docketing is completed."), 85, 86, 88 and Exs. 20 & 21 thereto. |
| 127. CNS has "experienced delays" in obtaining access to new complaints at courts where new civil complaints are not made public until after certain administrative tasks associated with intake have been completed. | Girdner Decl. ¶ 89; *id.* ¶¶ 34, 35, 82, 85-88 and Ex. 5 thereto.<br><br>Frez Decl. ¶ 6-16.<br><br>Marshall Decl. ¶¶ 53-59.<br><br>Angione Decl. ¶ 65.<br><br>Lee Decl. ¶ 12.<br><br>Ross Decl. ¶ 7. |
| 128. Some of the same state court clerks who have taken the position that new civil complaints should not be made public until after certain administrative tasks associated with the intake of those complaints have been completed have communicated with Defendant about this case. | Planet Depo. 144:2 – 157:18, Exs. 18 - 24 thereto (communications between Defendant and various state court clerks, including clerks for Orange, Santa Clara, San Diego, Sacramento and Los Angeles counties).  [filed as Ex. 1, pp. 64 – 77, 192 – 205 to Fetterly Decl.]<br><br>Frez Decl. ¶¶ 11, 15-16. |
| 129.  The California Judicial Council hired at least one of Defendant's attorneys. | *See also* Planet Depo. 159:7 – 10; 160:21 – 161:22.  [filed as Ex. 1, pp. 78 – 80 to Fetterly Decl.]<br><br>Camacho Depo., Vol. 2, 261:20 – 262:5. |

| | [filed as Ex. 8, pp. 606 – 607 to Fetterly Decl.) |
|---|---|

Dated: March 14, 2016                    BRYAN CAVE LLP

By:    /s/ Rachel E. Matteo-Boehm
       Rachel E. Matteo-Boehm
       Attorneys for Plaintiff
       COURTHOUSE NEWS SERVICE