UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  ____
Send      ____
Enter     ____
Closed    ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  **CV 11-08083 SJO (FFMx)**          DATE:  **May 26, 2016**

TITLE:      **Courthouse News Service v. Planet**

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                         Not Present
Courtroom Clerk                          Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                              Not Present

========================================================================
**PROCEEDINGS (in chambers):   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 119]**; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 163]

These matters come before the Court on cross-motions for summary judgment filed by Plaintiff Courthouse News Service ("CNS") ("CNS Motion") and Defendant Michael Planet ("Planet"), in his official capacity as Court Executive Officer of the Ventura County Superior Court ("VSC") ("Planet Motion") on or about March 14, 2016.[1]  On March 28, 2016, Planet opposed the CNS Motion ("Planet Opp'n") and CNS opposed the Planet Motion ("CNS Opp'n").   On April 4, 2016, CNS replied to the Planet Opp'n ("CNS Reply") and Planet replied to the CNS Opposition ("Planet Reply").   Thirteen media organizations[2] filed an *amicus* brief in support of CNS ("Amicus Br.") on March 21, 2016.  The Court found these matters suitable for disposition without oral argument and vacated the hearings set for April 11, 2015.  *See* Fed. R. Civ. P. 78(b).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the CNS Motion and **DENIES** the Planet Motion.

_____

[1]  Although Planet filed the Planet Motion several hours after the deadline imposed by the Court's Initial Standing Order, which deems such late-filed motions as filed on the next court day, (*see* Initial Standing Order, ECF No. 92), the Court overruled CNS's objection to the Planet Motion, noting that CNS had not indicated that it would suffer any prejudice as a result of the tardy filing, (*see* Minute Order, ECF No. 174).

[2]  The thirteen *amici* are:  The Reporters Committee for Freedom of the Press; American Society of News Editors; The Associated Press, Association of Alternative Newsmedia; Dow Jones & Company, Inc.; The E.W. Scripps Company; First Amendment Coalition; First Look Media Works, Inc.; The McClatchy Company; National Press Photographers Association; New England First Amendment Coalition; News Corp; and Radio Television Digital News Association (together, "Amici").  (*See* Mot. to File Amicus Br., Ex. 2 ("Amicus Br."), ECF No. 171; Order Granting Mot. to File Amicus Br., ECF No. 173.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**


**CASE NO.:  CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**


I.      FACTUAL AND PROCEDURAL HISTORY

CNS, a national news organization that publishes daily reports for its subscribers about civil litigation, including the filing of new lawsuits, initiated the instant lawsuit on September 29, 2011 seeking same-day access to new civil unlimited jurisdiction cases filed with VSC.  (*See* Compl., ECF No. 1.)  In its Complaint and First Amended Complaint ("FAC") filed on June 3, 2014, CNS alleges that, in contrast to the "longstanding tradition for both state and federal courts to provide reporters who visit the court every day with access to new complaints at the end of the day on which they are filed[,] . . . same-day access is a rarity at VSC and delays in access are rampant." (Compl. ¶¶ 4-5; FAC ¶¶ 4-5, ECF No. 58.)  Indeed, according to CNS's pleadings, "[d]uring a four-week period between August 8 and September 2, 2011, C[NS] was given same-day access to only small minority of new civil unlimited complaints, with the vast majority of complaints delayed for days or even weeks."  (FAC ¶ 5.)  "Having failed in its efforts to work cooperatively with [VSC] to reach an amicable resolution to these delays," CNS filed suit against VSC seeking injunctive and declaratory relief, asserting causes of action for violations of the First Amendment and federal common law pursuant to 42 U.S.C. § 1983 and California Rule of Court 2.550.  (*See* FAC ¶ 6.)

        A.      Procedural History

The instant action was initially assigned to Judge Manuel L. Real, who on November 30, 2011 granted VSC's motion to dismiss and abstain.  (Order Granting Def.'s Mot. to Dismiss and Abstain ("First Dismissal Order"), ECF No. 38.)  In the First Dismissal Order, Judge Real dismissed CNS's third claim for relief for violation of California Rule of Court 2.550 pursuant to the Eleventh Amendment to the United States Constitution and dismissed CNS's remaining § 1983 claims pursuant to the abstention doctrines enunciated in *O'Shea v. Littleton*, 414 U.S. 488 (1974) ("*O'Shea* abstention") and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman* abstention"), under which federal courts may decline to decide matters over which they have jurisdiction but which implicate sensitive state interests.  (*See* First Dismissal Order.)

CNS appealed the dismissal of its § 1983 claims[3] to the Court of Appeals for the Ninth Circuit, which on April 30, 2014 reversed and remanded in light of the important First Amendment questions raised in CNS's Complaint.  *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("*Planet I*").  In particular, the Ninth Circuit, noting that "*Pullman* abstention 'is generally inappropriate when First Amendment rights are at stake,'" found that "CNS's claims, like other First Amendment claims, raise issues of particular federal concern."  *Id.* at 784-85 (citing *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010)).

---

[3]  CNS did not appeal the dismissal of its cause of action for violation of California Rule of Court 2.550, and therefore this cause of action remains dismissed.  (*See* Mandate 9 n.5.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 11-08083 SJO (FFMx)**          **DATE:**  **May 26, 2016**

Upon remand, CNS filed its First Amended Complaint ("FAC") pursuant to the parties' stipulation, and Planet soon thereafter moved to dismiss the FAC for failure to state a claim upon which relief could be granted. (Stip. to Amend Compl., ECF No. 56; FAC, ECF No. 58; Mot. to Dismiss FAC, ECF No. 61.) On August 28, 2014, Judge Real, describing "the discrete issue presented in this case [a]s entirely temporal," dismissed the FAC under the Ninth Circuit's "experience and logic" test enunciated in *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984), which describes the extent of the right of access to judicial documents in criminal proceedings. (Order Granting Def.'s Mot. to Dismiss ("Second Dismissal Order") 4, ECF No. 82.) In particular, Judge Real found that CNS's request for same-day access failed both the "experience" and "logic" prongs as a matter of law, for "public access to certain proceedings and documents does not compel access to new civil unlimited complaints the moment they are received by a state court, **before** they are the subject to any type of judicial proceeding, and before they are available to the judges and their law clerks or the parties to the suit." (Second Dismissal Order 6-8 [emphasis in original].) Judge Real also noted that state courts "have the right to safeguard unprocessed documents from theft and damages, thereby ensuring the integrity of their files, and protecting the privacy and other interests of litigants and third parties." (Second Dismissal Order 8-9.)

CNS appealed the Second Dismissal Order to the Ninth Circuit, which on June 23, 2015 reversed and remanded, finding that the district court misapplied the standard governing Rule 12(b)(6) motions. *See Courthouse News Service v. Planet*, 614 Fed. App'x 912 (9th Cir. 2015) ("*Planet II*"). In particular, the Ninth Circuit held that although the district court applied the correct Supreme Court precedent, it failed to determine whether the delays alleged in the FAC, which must be taken as true for the purpose of ruling on a Rule 12(b)(6) motion, implicated the constitutional right to access to civil complaints. *Id.* at 914-15. The Ninth Circuit also granted CNS's request that the Clerk of Court for the Central District of California assign this case to a different district court judge upon remand. *Id.* at 915.

The instant action was subsequently remanded to the Central District of California and reassigned to this Court. (Mandate, ECF No. 90; Notice of Reassignment of Case, ECF No. 91.) On August 28, 2015, Planet filed his Answer to the FAC. (Answer, ECF No. 100.) On September 21, 2015, the Court held a scheduling conference in which it set a trial date for June 21, 2016 and a motion hearing cutoff date of April 25, 2016. (*See* Minutes of Scheduling Conference, ECF No. 105.) The parties filed their respective motions for summary judgment on or about March 14, 2016. (CNS Mot., ECF No. 119; Planet Mot., ECF No. 163.)

///
///
///
///
///
///
///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 11-08083 SJO (FFMx)</u>       **DATE:** <u>May 26, 2016</u>

B.   <u>Undisputed Facts</u>

As correctly noted by Planet in his reply brief, this case presents the "rare circumstance where cross-motions for summary judgment appear to be two ships passing in the night . . ." (Planet Reply 1, ECF No. 185.)  Notwithstanding the parties' widely divergent views regarding First Amendment jurisprudence and the relevance of voluntary changes in one parties' practices in a constitutional challenge brought pursuant to § 1983, the parties do not dispute a number of key material facts, as set forth below.

1.   <u>Courthouse News Service</u>

CNS is a nationwide legal news service founded in 1990 that specializes in news reporting on the legal record, from the date of filing new complaints through judgment and appeal. (Pl.'s Statement of Undisputed Material Fact ("PSUMF") ¶ 8, ECF No. 157.)  CNS covers approximately 2,600 state and federal trial and appellate courts around the nation and employs more than 250 reporters and editors, each of whom covers one or more federal and/or state courts. (PSUMF ¶¶ 9-10.)  Except in certain instances in which courts covered by CNS publish new civil complaints on the internet, CNS's employees visit their respective courts near the end of each day to review new civil complaints filed earlier that day and determine which ones merit coverage. (PSUMF ¶ 10.)

CNS has more than 2,700 subscribers nationwide, including lawyers, law firms, news organizations, other media outlets, and entertainment and watchdog groups. (PSUMF ¶¶ 11-12.)  In California state courts, CNS only reports on "unlimited jurisdiction" civil complaints, in which the amount in controversy exceeds $25,000. (PSUMF ¶ 16.)  There are approximately 65 subscribers to the "Central Coast Reports," which is the CNS publication that reports on lawsuits pending at VSC. (Def.'s Statement of Undisputed Material Fact ("DSUMF") ¶ 2, ECF No. 163-2.)

2.   <u>Michael Planet and Ventura Superior Court</u>

Defendant Michael Planet is, and has been since 2001, employed by VSC as its Court Executive Officer and Clerk. (PSUMF ¶ 1.)  As Court Executive Officer and Clerk, Planet is responsible for the administration of court records at VSC, including responding to requests by the media and the public for access to court records. (PSUMF ¶ 2.)  Cheryl Kanatzar ("Ms. Kanatzar") is, and has been since 2006, the Deputy Executive Officer for VSC, and responds directly to Planet. (PSUMF ¶ 3.)  In this role, Ms. Kanatzar is and was responsible for both processing civil court complaints filed at VSC and overseeing the management of all of the Court Processing Assistants ("CPAs") who work in the Civil Department of VSC. (PSUMF ¶¶ 4-5.)

///
///
///

3.   <u>History of the Relationship Between CNS and VSC</u>

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 11-08083 SJO (FFMx)**          **DATE:**  **May 26, 2016**

CNS began coverage of VSC in 2001, initially sending a reporter to visit the courthouse once per week.  (DSUMF ¶ 6.)  In November 2010, CNS began covering VSC on a daily basis.  (DSUMF ¶ 7.)  It again sought to work out an informal procedure to enable same-day access for its reporter, but it could not reach agreement with court staff.  (*See* PSUMF ¶ 35.)  In June 2011, CNS's counsel wrote to Planet, explaining that the delays were "effectively denials of access" and requesting that complaints be made available on the day of filing before being fully processed.  (PSUMF ¶ 36.)  In this correspondence, CNS's counsel noted that many other courts, in California and elsewhere, permitted reporters to access complaints before full processing was complete.  (PSUMF ¶ 36.)  Three weeks later, Planet denied this request.  (PSUMF ¶ 37.)  Citing "serious resource shortages as a result of budget reductions," Planet explained that VSC could not "prioritize [same-day] access over other priorities and mandates."  (PSUMF ¶ 37 [citing Decl. Jonathan Fetterly in Supp. CNS Mot. ("Fetterly CNS Mot. Decl."), Ex. 1 ("Planet Dep. Tr.") at Ex. 11].)  Prior to June 18, 2014, Planet refused to make complaints available before they had been fully processed.  (PSUMF ¶¶ 34, 37 [citing Planet Dep. Tr. at Ex. 11].)  Indeed, Planet to this day takes the position that new unlimited civil complaints received at VSC are not "filed" until after they are processed, nor do newly filed complaints become "official court records" or "public records" until after they are processed.  (PSUMF ¶¶ 30-32.)[4]  Planet maintains that it is appropriate for VSC to deny media requests to examine newly filed complaints on the ground that VSC has not yet completed its administrative tasks associated with processing those complaints.  (PSUMF ¶ 33.)  In particular, Planet contends that this no-access-before-processing policy was justified because of (1) concerns about privacy and confidentiality;[5] (2) concerns about accounting protocols and

_____

[4]  Although Planet "disputes" a number of purportedly undisputed facts recited in the PSUMF "as vague, ambiguous and misleading to the extent it refers to facts and testimony that pre-date VSC's scanning policy," he does not point to evidence in the record indicating there is a genuine dispute whether he has taken the position that new unlimited civil complaints received at VSC are neither "official court records" nor "public records" until after they are processed, or whether he maintains that it is appropriate for VSC to deny media requests to examine newly filed complaints on the ground that VSC had not yet completed its administrative tasks associated with processing those complaints.  (*See* Def.'s Opp'n to PSUMF ("PSUMF Opp'n") ¶¶ 31-33, ECF No. 182.)  Moreover, as "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," for the defendant could freely reenact the same practice, Planet's insinuation that VSC's enactment of the scanning policy moots this action misses the mark.  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  Whether Planet has demonstrated that the "likelihood of further violations is sufficiently remote to make injunctive relief unnecessary" is an issue discussed in detail in Section II(B)(3)(a)(i), *infra*.  *United States v. W. T. Grant Co.*, 345 U.S. 629, 633-36 (1953).

[5]  Ms. Kanatzar testified that concerns regarding the disclosure of private information contained in fee waiver applications and perhaps in other filed documents—such as social

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **CV 11-08083 SJO (FFMx)**                **DATE:** **May 26, 2016**

checks attached to complaints; (3) quality control ("QC") concerns; (4) efficient administration of the court; and (5) integrity of court records.  (PSUMF ¶¶ 86-87.)  VSC, however, generally does not redact information from new complaints themselves before filing them and making them available to the public, in part because California Rule of Court 1.20(b) provides that it is the filer's sole responsibility to exclude or redact private information from publicly filed documents.  (PSUMF ¶ 88; PSUMF Opp'n ¶ 88.)

As of October 31, 2011, VSC's Civil Department received approximately 8 unlimited civil complaints per day.  (PSUMF ¶ 43.)  At her November 18, 2015 deposition, Ms. Kanatzar estimated that in 2012, VSC's Civil Department received "probably between 10 and 12" unlimited civil complaints per day, and that the department receives "between 12 and 15 civil unlimited cases per day now."  (PSUMF ¶¶ 44-45.)

### 4.   VSC's Access Policy Between 2010 and June 18, 2014:  CCMS Processing

VSC does not maintain any civil unlimited jurisdiction case files in electronic format and does not require litigants to submit complaints, motions, or any other documents through an electronic filing system; instead, it maintains all case files in hard copy form.  (DSUMF ¶ 4; PSUMF Opp'n ¶ 60.)  Prior to enacting the Scanning Policy discussed in greater detail below, VSC maintained a "media bin" in its Records Department in which newly filed civil complaints, with the exception of those requiring "immediate judicial review," were intended to be deposited for public access after processing by a Court Processing Assistant ("CPA").  (DSUMF ¶ 4.)

Since at least November 1, 2010, VSC processed most new unlimited civil complaints received by VSC at either the filing counters or the new filings desk(s) in the Civil Department.  (PSUMF ¶ 46.)  Since at least 2010, VSC has used the Court Case Management System, Version 3 ("CCMS") to process new complaints it receives and to maintain its docket of court filings.  (PSUMF ¶ 47.)  The utilization of CCMS required CPAs at VSC to enter "considerably more information" and required "a fair amount of time" to process new complaints before a file number could be generated.  (PSUMF ¶ 48.)[6]

_____

security numbers, financial status, and mailing addresses—is one reason VSC requires processing before the public is permitted to view newly filed complaints.  (PSUMF ¶ 87.)  Ms. Kanatzar also testified, however, that she did not know whether VSC staff reviewed newly filed unlimited civil cases before they were placed in the media bin, nor whether VSC redacted information contained in such complaints.  (_See_ Fetterly CNS Mot. Decl., Ex. 2 ("Kanatzar Dep. Tr.") at 139:19-143:17.)

[6]  VSC requires the following steps to process a new civil complaint using CCMS:

> First, a CPA reviews the documents to determine that the complaint is being
> filed in the correct court and the documents necessary to initiate the case are

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-08083 SJO (FFMx)**      **DATE:  May 26, 2016**

CPAs who were newly assigned to the new filings desk were subject to QC review, which consisted of a supervisor's review of the clerk's entry of data into CCMS and confirmation that documents were signed and stamped correctly. (PSUMF ¶ 54.) CPAs assigned to the new filings desk were rotated frequently and were subject to such QC review for varying periods of time, between several weeks and several months. (PSUMF ¶ 55.) The actual QC review process could take one to several days to complete, and newly filed complaints could "stack up" on the desk of a CPA or supervisor awaiting QC review.  (PSUMF ¶¶ 57-58.)

Between November 2010 and June 18, 2014, unless a newly filed complaint was required to be presented to a judicial officer for review,[7] CPAs who processed such complaints first designated such complaints as "located to Media Bin" in CCMS, and subsequently routed such complaints to the physical media bin in the records department for viewing by the public. (PSUMF ¶ 52.) The QC review noted above took place after new complaints were processed and "located" to the media bin, but before they were actually routed to the physical media bin. (PSUMF ¶ 56.) Newly filed complaints processed by CPAs who were subject to QC review would not go to the physical media bin until after the QC process had been completed.  (PSUMF ¶ 59.)

New complaints designated as "located to the media bin" in CCMS, however, were not always located in the physical media bin.  (PSUMF ¶ 61.)  Moreover, VSC did not maintain a record of when new complaints were delivered to the media bin or who delivered them until April 22, 2014. (PSUMF ¶ 62.)  Perhaps in part as a result of these issues, new complaints received for filing at VSC are not always processed on the same day they are received for filing.  (PSUMF ¶ 60.)

For example, between August 8 and September 2, 2011, CNS reviewed 152 new complaints filed at VSC; of these, only 9 were made available to CNS the same day they were filed, 28 were made

---

       presented with the correct filing fee or fee waiver.  Second, the CPA enters all the required case information to "create" a new case in CCMS.  Third, all accompanying instruments, for example checks, are entered and the receipt is generated.  Fourth, any summons required are issued.  Fifth, the documents are stamped as "Filed."  Sixth, the labels generated from CCMS are placed on the physical case file, along with the filing date, courtroom assignment, and case destruction stamp.  Finally, the documents are placed in a physical case file.

(PSUMF ¶ 49.)

[7]  Since at least February 2012, certain complaints, such as those filed with a Civil Case Cover Sheet requesting the case be deemed "complex" or CEQA cases, were routed to judicial officers in lieu of being placed in the media bin.  (PSUMF ¶¶ 52, 73.)  Such complaints were processed before being routed to judicial officers, and in the event of a processing backlog, these complaints were not given priority.  (PSUMF ¶ 74.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 11-08083 SJO (FFMx)          **DATE:**  May 26, 2016

available to CNS the next court day, and 115 were not made available for review for two or more court days.  (PSUMF ¶ 63.)[8]  During other periods between 2012 and 2015, CNS experienced the following delays:

| Time Period | Same Day  (%) | Next Day (%) | 2+ Day  (%) |
| --- | --- | --- | --- |
| June 11-22, 2012 | 0 | 55 | 45 |
| December 10-21, 2012 | 2 | 46 | 52 |
| August 12-23, 2013 | 0 | 67 | 33 |
| March 24-April 4, 2014 | 3 | 32 | 65 |
| April 14-25, 2014 | 14 | 66 | 20 |
| November 16-27, 2015 | 69 | 14 | 17 |

(PSUMF ¶ 64.)  Staff at VSC acknowledged these delays, as evidenced by internal memoranda that identify backlogs ranging from several days to several weeks.  (PSUMF ¶¶ 65-70.)  One such memorandum, dated July 19, 2010, states in relevant part:  "The civil department continues to show significant amount of backlog in new filings and judgments.  However, the oldest date items are within reason per our new drop off policy."  (PSUMF ¶ 67.)

> ### 5.   VSC Explores Alternatives to Its System of Making Complaints Available After Processing in CCMS

In light of these noted delays and several correspondences between Planet and representatives and counsel for CNS regarding these delays, (*see* PSUMF ¶¶ 38-40), VSC brainstormed several potential alternatives to its then-existing process-then-access procedure.  First, in June 2013, VSC

---

[8]  Although Planet "disputes" this allegation, he points to no evidence as to why these allegations are "inaccurate individually (based on a review of the individual case files) [or] collectively . . ."  (PSUMF Opp'n ¶ 63.)  To the extent Planet contends that "even before the scanning policy was implemented, such delays were rare, and were the result of inadvertent clerical errors" is belied by his own declaration submitted by Julie Camacho, in which she admits that during the same time period, 54 of the 147 new complaints filed were processed and placed in the media bin on the next day, 18 were processed and placed in the media bin on the following day, 7 were not placed in the media bin due to an "inadvertent clerical error," 3 were "backdated five (5) days and one filing was backdated 10 days" as a result of either being received and couriered from the Simi Valley branch or from an "anomaly in processing."  (Decl. Charlotte S. Wasserstein in Supp. Planet Opp'n ("Wasserstein Opp'n Decl."), Ex. P ¶¶ 15-21, ECF No. 182-1.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**

conducted a "pilot program" to test whether VSC could make scanned copies of new complaints available before processing.  (PSUMF ¶ 77.)  Although "[t]he 'test' project in scanning the new filings went well," it was ultimately not implemented due to "bugs" and concerns about "firewall issues."  (PSUMF ¶ 77; PSUMF Opp'n ¶ 77.)

Moreover, in April 2014, VSC employees discussed "the idea of making a copy [of new complaints] or possibly having a local rule requiring the submitting party to submit an additional copy" that could be placed in the media bin at no additional cost to VSC.  (PSUMF ¶¶ 79, 81.)  VSC expressly rejected the idea of having a local rule requiring parties to submit an extra copy of the complaint and its exhibits for the media to review,[9] and VSC employees never followed up with the suggestion of having VSC itself make copies to place in the media bin.  (PSUMF ¶¶ 80, 82-83.)

> **6.     VSC's Implements the "Scanning Policy" on June 18, 2014**

On June 18, 2014, VSC adopted a scanning program whereby new civil complaints—and only such complaints—are scanned, before processing, and made available for public viewing at computer terminals located in the clerk's office ("Scanning Policy").  (PSUMF ¶ 85; PSUMF Opp'n ¶ 96; Planet Dep. Tr., Ex. 16 ("Scanning Policy").)   VSC does not review the complaints themselves before scanning, and does not scan accompanying documents, such as fee waiver applications, due to privacy concerns.  (*See* PSUMF ¶ 89; PSUMF Opp'n ¶ 89.)  Planet believes the Scanning Policy addresses VSC's previously expressed concerns, as complaints are scanned prior to processing and possible QC review.  (PSUMF ¶ 99; PSUMF Opp'n ¶ 99..)

CMS has identified one instance in which a complaint filed in VSC on January 7, 2016 was not made available to be viewed in the computer terminals to which the public has access until January 11, 2016.  (PSUMF ¶ 72.)  Planet acknowledges this example, but contends that it was the result of human error, and is one of the 134 out of 4,628 civil complaints filed since the scanning policy's implementation that was not made available the same day it was filed.  (PSUMF Opp'n ¶ 72.)

**II.     DISCUSSION**

---

[9]  Planet submits that this idea was not implemented because "VSC made the common sense decision not to impose upon each and every litigant the burden and cost of submitting an extra copy of filed complaints, which would inure only to the benefit of CNS, a for-profit corporation, which is generally the only media outlet that requests access to civil complaints filed at VSC."  (PSUMF Opp'n ¶ 79.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 11-08083 SJO (FFMx)</u>          **DATE:**  <u>May 26, 2016</u>

Tasked with playing the part of judicial lighthouse for these "two ships passing in the night," (*see* Planet Reply 1), the Court must first shed light on the parties' legal positions and the relevant First Amendment principles.

According to CNS and Amici, the central question the Court must answer in this case is whether the First Amendment of the United States Constitution requires that new civil complaints filed on a particular day must be made available for review by the media and the public by the end of that day.  (*See* CNS Mot. 1 ["[T]his case only seeks to restore the simple premise that new civil complaints filed throughout the day can and should be available for media review by the end of the day."]; Amicus Br. 12 ["Denying reporters access to civil complaints on the day they are filed threatens to stifle free speech and public debate at the moment complaints are most newsworthy."]; CNS Reply 2 ["[T]he access right attaches '[u]pon th[e] court's receipt of a submitted document,' . . . from which point delaying access until the end of the court day may be a reasonable TPM restriction, but a delay of '48 hours,' . . . or '24 hours' to a single document or hearing is unconstitutional unless necessary to protect a compelling interest. . ."].)  CNS contends the Court must answer this question in the affirmative, taking the position that because many state and federal courts across the nation traditionally have and do provide journalists with same-day access to newly filed complaints, Planet cannot carry his burden of showing VSC's delays in granting access to newly filed complaints as a result of its "processing" procedure is justified.

Planet responds as follows:  (1) CNS's argument fails because it is undisputed that VSC's Scanning Policy has "cured" any delays resulting from VSC's previous processing procedure, rendering permanent injunctive relief inappropriate; (2) the First Amendment does not require "same-day" access, even though this is what VSC now provides in 97% of cases; and (3) VSC's Scanning Policy is a reasonable time, place, and manner restriction.  (*See generally* Planet Opp'n, Planet Reply.)

Having set forth the parties' respective positions, the Court now discusses the applicable legal standards.

///
///
///

      A.    <u>Legal Standards</u>

           1.    <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the party moving for summary judgment would bear the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**

burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 325.  Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*  "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Once the moving party meets its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by [the] depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radios Corp.*, 475 U.S. 574, 586 (1986). "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50.  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587.

##### 2.     First Amendment Right of Access to Judicial Documents and Proceedings

"The First Amendment, in conjunction with the Fourteenth, prohibits governments from 'abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (quoting U.S. CONST. amend. I).  "Although the First Amendment does not enumerate special rights for observing government activities, '[t]he Supreme Court has recognized that newsgathering is an activity protected by the First Amendment.'" *Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012) (quoting *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978)). "To provide this First Amendment protection, the Supreme Court has long recognized a qualified right of access for the press and public to observe government activities," which "originated in a series of cases in which the media sought to observe criminal judicial proceedings."  *Id.* at 898.

The scope of this qualified right of access has since expanded, and the Court of Appeals for the Ninth Circuit now holds "that access to public proceedings and records is an indispensable predicate to free expression about the workings of government."  *Planet I*, 750 F.3d at 785.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **CV 11-08083 SJO (FFMx)**          **DATE:** **May 26, 2016**

Moreover, "federal courts of appeals have widely agreed that this important First Amendment right of access 'extends to civil proceedings and associated records and documents.'" *Planet II*, 614 Fed. App'x at 914 (quoting *Planet I*, 750 F.3d at 786). This is because the right of access is "an essential part of the First Amendment's purpose to 'ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government.'" *Planet I*, 750 F.3d at 785 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982)); *see also Associated Press v. U.S. Dist. Court for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("We thus find that the public and press have a first amendment right of access to pretrial documents in general.").

As noted by the Supreme Court in the seminal *Richmond Newspapers* decision, however, the "First Amendment rights of the public and representatives of the press are [not] absolute," analogizing right of access cases to those in which "a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic . . ." *Richmond Newspapers*, 448 U.S. at 581 n. 18. Following this analogy, the Ninth Circuit holds that the "right of access may be overcome by an 'overriding [governmental] interest based on findings that closure is essential to preserve higher values,'" acknowledging that "[t]he delay in making the complaints available may also be analogous to a permissible 'reasonable restriction[ ] on the time, place, or manner of protected speech.'" *Planet I*, 750 F.3d at 785 n. 9 (quoting *Leigh*, 677 F.3d at 898; *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

Accordingly, to determine whether Planet has violated CNS's constitutional right to access newly filed civil complaints, the Court must apply the two-part test announced in *Press-Enterprise Co. v. Superior Court of California for Riverside County* ("*Press-Enterprise II*"). First, the Court must determine the scope of the qualified First Amendment right of access—i.e., whether the Constitution requires that courts make civil complaints available to the press and the public at large the same day that such complaints are filed, or instead imposes some other obligation—which requires examining "considerations of experience and logic." *Press-Enterprise II*, 478 U.S. 1, 9 (1986). If such a "qualified First Amendment right of public access attaches," then the Court must determine whether Planet's access policy or policies are "essential to preserve higher values and [are] narrowly tailored to serve that interest," i.e. by constituting a reasonable time, place, or manner restriction. *Id.* In particular, in order to prevail as to this second inquiry, Planet must demonstrate that its access policies amount to "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward*, 491 U.S. at 791 (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

3.    Injunctive Relief, Declaratory Relief, and Mootness

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 11-08083 SJO (FFMx)**          **DATE:** **May 26, 2016**

In its prayer for relief, CNS seeks both "preliminary and permanent injunctions against" Planet that would prohibit him "from continuing his policies resulting in delayed access to new unlimited jurisdiction civil complaints and denying C[NS] timely access to new civil unlimited jurisdiction complaints on the same day they are filed, except as deemed permissible following the appropriate case-by-case adjudication." (FAC at 13.)  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).  To be awarded a permanent injunction, "[a] plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Amoco Prod'n Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

"An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief."  *Salazar v. Buono*, 559 U.S. 700, 714 (2010) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)).  "The sole function of an action for injunction is to forestall future violations.  It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured."  *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952).

"Equitable relief is not granted as a matter of course . . ., and a court should be particularly cautious when contemplating relief that implicates public interests . . . ."  *Salazar*, 559 U.S. at 714 (internal citations omitted).  "Because injunctive relief 'is drafted in light of what the court believes will be the future course of events, . . . a court must never ignore significant changes in the law or circumstances underlying an injunction lest the decree be turned into an 'instrument of wrong.'"  *Id.* at 714-15 (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2961, pp. 393-94 (2d ed. 1995)).

One instance in which an injunction should not issue is where a change in the defendant's conduct has rendered the case moot.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike, Inc.*, — U.S. —, 133 S. Ct. 721, 726 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).  "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."  *Knox v. Serv. Emps. Int'l Union, Local 1000*, — U.S. —, 132 S. Ct. 2277, 2287

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**

(2012); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal quotation marks omitted)).  "But voluntary cessation can yield mootness if a 'stringent' standard is met:  'A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Friends of the Earth*, 528 U.S. at 189).

Although courts "presume that a government entity is acting in good faith when it changes its policy . . . when the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again."  *Id.* (internal citations omitted).  This is because "a case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision."  *Id.* (quoting *Coral Constr. Co. v. King County*, 941 F.2d 910, 928 (9th Cir. 1991)).  "A statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed."  *Id.* (quoting *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006)).  "By contrast, 'repeal or amendment of an ordinance by local government or agency does not necessarily deprive a federal court of its power to determine the legality of the practice' at issue."  *Id.* (quoting *Bell v. City of Boise*, 709 F.3d 890, 899 (9th Cir. 2013)).  Finally, "a policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot . . ., but it may do so in certain circumstances."  *Id.* (internal citations omitted).  Thus, the Ninth Circuit has indicated that consideration of the following five factors may indicate whether mootness is more likely:

> (1) the policy change is evidenced by language that is "broad in scope and unequivocal in tone;" (2) the policy change fully "addresses all of the objectionable measures that [the Government] officials took against the plaintiffs in th[e] case;" (3) "th[e] case [in question] was the catalyst for the agency's adoption of the new policy;" (4) the policy has been in place for a long time when we consider mootness; and (5) "since [the policy's] implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff[.]"

*Id.* at 972 (internal citations omitted).  "On the other hand, [courts] are less inclined to find mootness where the 'new policy . . . could easily be abandoned or altered in the future."  *Id.* (quoting *Bell*, 709 F.3d at 901).  "Ultimately, the question remains whether the party asserting mootness 'has met its heavy burden of proving that the challenged conduct cannot reasonably be expected to recur.'"  *Id.* (quoting *White v. Lee*, 227 F.3d 1214, 1243-44 (9th Cir. 2000)).

CNS also seeks a declaration that Planet's "policies that knowingly affect delays in access and a denial of timely, same-day access to new civil unlimited complaints a[re] unconstitutional under the First and Fourteenth Amendments to the United States Constitution . . . ."  (FAC at 13.)  "A judicial declaration . . . 'clarifies the parties' legal relations and affords relief from the uncertainty

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** __CV 11-08083 SJO (FFMx)__          **DATE:** __May 26, 2016__

surrounding [a defendant's] obligations," including those under the First Amendment. *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 232 (9th Cir. 1989).

B.    Analysis

1.    CNS Has Not Demonstrated that the First Amendment Requires that Courts Grant Access to Complaints the "Same Day They Are Filed"

Starting from the undisputed premise that "the public and press have a first amendment right of access to pretrial documents in general," *Associated Press*, 705 F.2d at 1145, CNS and Amici principally advocate that the Constitution requires that courts provide public access to newly filed civil complaints the same day they are filed. (*See generally* CNS Mot., Amicus Br., CNS Reply.) In support of this contention, CNS selectively quotes from a number of Ninth Circuit cases involving distinct First Amendment rights; none of these cases, however, lead to the conclusion that the First Amendment requires affording same-day access to all newly filed civil complaints.

First, neither of the appellate decisions arising out of this case, *Planet I* or *Planet II*, hold that the First Amendment requires providing same-day access to newly filed complaints.  In *Planet I*, the Ninth Circuit noted that "[t]here may be limitations on the public's right of access to judicial proceedings, and mandating same-day viewing of unlimited civil complaints may be one of them." *Planet I*, 750 F.3d at 792-93.  The Ninth Circuit expressly stated that it "take[s] no position on the merits of CNS's claims," and remanded so that the district court could adjudicate the case on the merits.  *Id.* at 793.  Thus, CNS's citation to *Planet I* for the proposition that because many courts allow the press to see complaints the day they are filed, same-day access must be what the First Amendment requires, does not persuade.  (*Cf.* Mot. 1 [citing *Planet I* for the following language: "[i]n courthouses around the country – large and small, state and federal – CNS reporters review civil complaints on the same day they are filed."].)

Moreover, in *Klein v. City of San Clemente*, the Ninth Circuit enjoined the City of San Clemente's anti-litter ordinance prohibiting vehicle leafletting, noting (1) that neither the interest in prohibiting litter nor the protection of private property constituted sufficiently substantial government interests to warranting restricting speech; and (2) that such a blanket prohibition was not narrowly tailored to advance either of its asserted interests.  584 F.3d 1196 (9th Cir. 2009).  Although the Court finds *Klein*'s broad declaration "that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,'" *id.* at 1207-08 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976), the case is otherwise distinguishable from the case at bar.

The only case the Court has been able to locate that even arguably holds that a state court violates the First Amendment by withholding access to newly filed complaints for even one day is *Courthouse News Service v. Jackson*, a case from the Southern District of Texas in which the district court, in its order granting CNS's motion for a preliminary injunction, determined "that the 24 to 72 hour delay in access is effectively an access denial and is, therefore, unconstitutional."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 11-08083 SJO (FFMx)          DATE:  May 26, 2016**

*Courthouse News Service v. Jackson* ("*Jackson I*"), Civil Action No. H-09-1844, 2009 U.S. Dist. LEXIS 62300, at *10-12 (S.D. Tex. July 20, 2009).  In so ruling, the court relied on a case from the Seventh Circuit stating that "[t]he newsworthiness of a particular story is often fleeting."  *Id.* at *11.  The court in *Jackson*, however, ultimately entered an **agreed-upon** permanent injunction requiring the Harris County District Clerk's Office to provide "same-day access to, and ability to download, print, or obtain a hard copy of, all petitions and case-initiating documents in civil cases (excluding family law cases), filed and received by the Harris County District Clerk between 12:00 a.m. midnight and the time the Harris County District Clerk's Office closes (at the present time, this means up until 5:00 p.m. Central Time Monday through Friday)," subject to a number of express limitations.  *Courthouse News Service v. Jackson* ("*Jackson II*"), Civil Action No. 4:09-CV-01844, 2010 U.S. Dist. LEXIS 74571, at *3 (S.D. Tex. Feb. 26, 2010).  These limitations include, *inter alia*, (1) "where the filing party is seeking a temporary restraining order or other emergency relief, or has properly filed the document under seal, or an applicable court order, statute, or local rule provides that the document is confidential;" (2) where the intake department of the Clerk's Office "is in critical staffing mode or completely closed for business due to inclement weather, building evacuation, or other emergency;" and (3) "where other extraordinary circumstances outside of the control of the District Clerk's Office make compliance literally impossible, in which case the document will be made available on the same day that compliance is no longer impossible."  *Id.* at *3-4.

The Court agrees with the reasoning in *Jackson I* insofar as the case holds that the First Amendment requires that courts provide **timely access** to newly filed complaints.  To the extent one could read the preliminary injunction order in *Jackson I* as conferring a **same-day right of access** to newly filed complaints, however, this Court would reach a different conclusion.  In the chief case cited by *Jackson* on this issue, *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, the Seventh Circuit, tasked with determining whether members of the press had standing to challenge a protective order issued in a single case, held that "[i]n light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be **immediate and contemporaneous**."  24 F.3d 893, 897 (7th Cir. 1994) (emphasis supplied) (quoting *Nebraska Press Ass'n v. Stuart* ("*Stuart II*"), 427 U.S. 539 (1976)).  According to the Seventh Circuit, the requirement of "immediate and contemporaneous" access follows from the premise that "each passing day may constitute a separate and cognizable infringement of the First Amendment."  *Id.* (quoting *Nebraska Press Ass'n v. Stuart* ("*Stuart I*"), 423 U.S. 1327, 1329 (1975)).  Both the *Grove Fresh* and *Stuart II* cases, however, involved instances in which individual members of the press were denied access to documents or proceedings that were particularly requested by the members of the press, who then challenged those denials of access on First Amendment grounds.  Here, by contrast, CNS challenges Planet's former and current access policies generally, which in certain instances have resulted in complaints not being accessible for more than a day after they were filed.  Although *Grove Fresh*, *Stuart II*, and the instant action all center on the First Amendment right of access, the Court finds "the legal context in which [they] arise[ ]" to materially differ, *Stuart II*, 427 U.S. at

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 11-08083 SJO (FFMx)**          **DATE:**  **May 26, 2016**

551, and therefore declines to read a universal "same-day" access requirement into the First Amendment.

Moreover, neither the numerous non-binding cases cited by CNS in the CNS Motion nor the voluminous declarations submitted in support of its motion convince the Court that "experience" or "logic" teach that the First Amendment requires same-day access to newly filed complaints. First, although the bulk of the cited cases discuss the longstanding history of courts granting expeditious public access to complaints and the policy rationales underlying this historical practice, aside from the *Jackson* case discussed above in which the parties stipulated to the entry of an agreed-upon judgment, **none** instruct that the Constitution requires same-day access.  *See, e.g.*, *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, No. 15-0374-cv, 2016 U.S. App. LEXIS 3233, at *17 (2d Cir. Feb. 24, 2016) (invoking the "experience and logic" test to find a presumptive right of access to complaints in the context of sealing such documents, and not addressing same-day access).  Indeed, a review of the various states' rules of court and the parties' numerous declarations regarding the access procedures of courts across the country reveal the existence of a genuine dispute[10] as to whether a practice of same-day access has been adopted nationwide. (*See* PSUMF Opp'n ¶ 19 [highlighting the dispute regarding the access procedures of various courts].)  Because "the experience test requires that a right be established nationwide" and because the existence of a nationwide practice of providing same-day access is genuinely disputed, the Court concludes that CNS has failed meet its burden of demonstrating the existence of a qualified right of access to complaints the same day they are filed.

The Court likewise finds that CNS has failed to demonstrate the "logic" in creating a bright-line rule mandating same-day access to newly filed complaints.  Although "same-day access" certainly has a pleasant ring to it, the cases selectively cited by CNS do not call for such a rule, separate and apart from the principle that the First Amendment requires providing timely access to newly filed complaints.  To the extent CNS contends that "same-day access" is the only logical line that can be drawn to ensure that "timely access" is afforded—given, for example, the "news cycle" cited

---

[10] CNS contends that Planet's dispute is not "genuine" because Planet "offers only CNS's Report Cards from 2011 identifying 6-10 courts with poor grades in same-day access," while CNS has presented 32 declarations, arguing that Planet's minimal evidence cannot, as a matter of law, create a genuine dispute over whether there is history of same-day access. (Planet Opp'n 20 n.10.)  Notwithstanding the existence of Ninth Circuit law holding that "an unbroken history of public access" is not required to satisfy the "experience" prong, the Court finds Planet's (1) reference to the CNS "Report Card," (*see* Planet Mot. 14 n.11); (2) use of CNS's own declarants' testimony regarding percentages of courts providing same-day access, (*see* PSUMF Opp'n ¶ 19); and (3) citation to several statutes and regulations regarding access to complaints that do not require same-day access, (*see* Planet Mot. 14 n.12, 15 n.13), sufficient to demonstrate a genuine dispute as to whether courts nationwide have historically provided same-day access to complaints.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 11-08083 SJO (FFMx)          DATE:  May 26, 2016

by CNS's president, (*see* Girdner Decl. ¶ 63)—in light of the "24/7" nature of the news cycle, (CNS Mot. 20 [quoting Drechsel Decl. ¶¶ 14, 45-49]), such an argument logically culminates with a requirement that courts make complaints available the exact moment they are received.  CNS can petition others for such a rule, but the Court finds that it would defy logic to read an unyielding same-day access requirement into the First Amendment.

For the foregoing reasons, the Court **DENIES** the CNS Motion insofar as it asks the Court to find a First Amendment right of same-day access to newly filed complaints.[11]

> 2.   CNS Has, However, Demonstrated that a Qualified First Amendment Right of Timely Access to Complaints Arises When New Complaints Are Received

Notwithstanding the Court's rejection of a qualified First Amendment right of access to newly filed complaints the same day they are filed, the Court concludes that CNS has succeeded in establishing a qualified First Amendment right of **timely access** to such complaints that **attaches when new complaints are received by a court**.  As a starting point, the Ninth Circuit in *Planet I* held that "there is no question that CNS itself has alleged a cognizable injury caused by the Ventura County Superior Court's denial of timely access to newly filed complaints," without deciding whether Planet and VSC's policy in fact violated the First Amendment.  *Planet I*, 750 F.3d at 788.  Thus, the Ninth Circuit recognizes a qualified right of timely access to newly filed complaints.

The Ninth Circuit did not decide, however, at what point in time this qualified right attaches—i.e., when the complaint is received by the court, or instead after a complaint has been sufficiently "processed."  Although the principal case cited by CNS in support of its contention that "Ninth Circuit law makes clear [the right of] access attaches upon receipt by the clerk," *Associated Press*, does not actually contain such a holding,[12] the Court nevertheless finds that CNS has met its burden of demonstrating that both "experience" and "logic" dictate such a result.

Indeed, CNS has submitted a number of declarations demonstrating that there is a long history of courts making complaints available to the media and the public soon after they are received, regardless whether such courts use paper filing or e-filing systems.  (*See, e.g.*, Decl. Robert Drechsel in Supp. CNS Mot. ("Drechsel Decl.") ¶ 39, ECF No. 120; Decl. Adam Angione in Supp.

---

[11]  Because the Court finds that CNS has failed to meet its burden of demonstrating that the "experience" prong of the *Press-Enterprise II* test is satisfied, it need not consider whether a requirement of same-day access "plays a significant positive role in the functioning of the particular process in question."  *Press-Enterprise II*, 478 U.S. at 9.

[12]  CNS's citation refers instead to a sealing procedure put in place by this district in 1983, and does not refer to a holding that the right of access attaches upon receipt by the court. *Associated Press*, 705 F.2d at 1145.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-08083 SJO (FFMx)</u>          **DATE:** <u>May 26, 2016</u>

CNS Mot. ("Angione Decl.") ¶¶ 51, 61, 66-68, ECF No. 131; Decl. Nick Cahill in Supp. CNS Mot. ("Cahill Decl.") ¶ 8, ECF No. 148.)  Although Planet genuinely disputes whether CNS's numerous declarations reveal a history of same-day access across the nation, (*see* CNS Opp'n 12-13), Planet does not contend that there is no history of courts providing timely access to newly filed complaints upon receipt of such documents by court personnel.  Moreover, it is undisputed that complaints newly filed at VSC itself are and have at all relevant times been deemed "filed" on the date they are received, which Planet contends is required in order to comply with California Rule of Court 1.20(a), which mandates that complaints must be "deemed filed on the date [they are] received by the court clerk."  (PSUMF ¶ 23; PSUMF Opp'n ¶ 23.)  Thus, the Court finds that civil complaints have historically been made available to the public and the press soon after they are received by the court.

"Logic" likewise demands that the qualified right of timely access must arise the moment a complaint is received by the court, rather than after "processing" is completed.  Planet does not meaningfully dispute that timing is a critical element of a story's newsworthiness.  (*Cf.* PSUMF Opp'n ¶ 26 [arguing first that CNS is often its own cause for delay in reporting, and then submitting that "while same-day access might impact the timeliness of reporting, it does not affect the newsworthiness of the complaint's substance"].)  Indeed, it would be nonsensical for a qualified right of access to arise only after a complaint has been "processed," for such a rule would run contrary to the text of and purpose underlying various rules of court—including California Rule of Court 1.20(a), which requires that complaints be "deemed filed on the date [they are] received by the court clerk"—every time a complaint is not processed the day it is received for filing.  *See* Cal. R. 1.20(a).  Moreover, given the express need to "balance[ ] the vital public interest in preserving the media's ability to monitor the government's activities against the government's need to impose restrictions if necessary for safety or other legitimate reasons," *Leigh*, 677 F.3d at 900, it would make little sense to restrict the media's ability to monitor until after court personnel have had an opportunity to delay providing access to the requested complaints.

For the foregoing reasons, the Court concludes that the qualified right of timely access to newly filed complaints arises when a complaint is received by a court, rather than after it is "processed."  The propriety of Planet's processing system is discussed in the section immediately below.

> 3.   <u>Planet Has Not Met His Burden of Proving the Processing Before Providing Access Policy Satisfies the Second Prong of the *Press-Enterprise II* Test</u>

Having determined that the press and public have a qualified right of timely—but not "same-day"—access to newly filed complaints, the Court must determine whether Planet's policies limiting such access at VSC are "essential to preserve higher values and [are] narrowly tailored to serve that interest."  *Press-Enterprise II*, 478 U.S. at 9.  In particular, in order to prevail as to this second inquiry, Planet must demonstrate that VSC's access policies amount to "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**

to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward*, 491 U.S. at 791 (quoting *Clark*, 468 at 293).

Two different access policies are relevant to the second *Press-Enterprise II* inquiry.  First, there is VSC's former policy of processing newly received complaints using CCMS prior to making such complaints available for public viewing by placing them in a physical media bin.  Second, there is VSC's current policy of "scanning" newly filed complaints and making such complaints available for review.  The Court considers each of these policies in turn.

> a.   Planet Has Failed to Justify Delays Resulting from VSC's Process-
> Before-Access System

As noted above, the following facts regarding VSC's access policy that existed between 2010 and June 18, 2014 are undisputed.  Complaints received by CPAs were not placed in the physical media bin in the records department for viewing by the public until after such complaints were "processed."  (PSUMF ¶ 52.)  As part of this "processing" procedure, CPAs were required to (1) review complaints and supporting materials to determine that they were being filed in the correct court and review the filing fee or fee waiver; (2) enter all the required case information to "create" a new case in CCMS, VSC's case management system; (3) enter all accompanying instruments, such as checks, into CCMS and generate a receipt for these instruments; (4) issue any required summons; (5) stamp the complaint as "Filed;" (6) generate labels from CCMS and place them on the physical case file along with the filing date, courtroom assignment, and case destruction stamp; and (7) place the documents in a physical case file.  (PSUMF ¶ 49.)  Thereafter, CPAs were required to designate complaints as "located to Media Bin" in CCMS, and subsequently route the complaints to the physical media bin.  (PSUMF ¶ 52.)  This procedure was elongated if the CPA was subject to QC review; in such an instance, newly filed complaints processed by such CPAs would not be routed to the physical media bin until after the entire QC process had been completed, which could take up to several days to complete.  (PSUMF ¶¶ 57-58.)

Moreover, new complaints designated as "located to Media Bin" in CCMS were not always located in the physical media bin.  (PSUMF ¶ 61.)  VSC did not maintain a record of when new complaints were delivered to the media bin or who delivered them until April 22, 2014.  (PSUMF ¶ 62.)  Perhaps as a result of these issues, new complaints received for filing at VSC were not always processed on the same day they were received for filing.  Indeed, the CMS reporter assigned to cover VSC has declared that during several periods of more than ten days, VSC did not make the majority of newly filed complaints available for public viewing until two or more days after they were received.  (PSUMF ¶¶ 60, 63-64.)  VSC staff acknowledged these delays as early as July 19, 2010.  (PSUMF ¶¶ 65-70.)  Indeed, VSC staff brainstormed and ultimately explored alternative access policies, but did modify the aforementioned policy until June 18, 2014, the date the Scanning Policy was adopted.  (PSUMF ¶¶ 77, 79-85.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**

      i.      <u>Planet Has Not Demonstrated that VSC's Adoption of the Scanning Policy Renders the Case Moot</u>

Planet does not attempt to justify the constitutionality of the delays that resulted from VSC's access policy that was in place prior to the adoption of the Scanning Policy on June 18, 2014. (*See generally* Planet Mot.; CNS Opp'n; Planet Reply.)  Instead, Planet contends that VSC's Scanning Policy—which is discussed in detail in Section II(B)(3)(b), *infra*—provides same-day access to newly filed complaints in the vast majority of cases and does not require processing, and further argues that the case is now "moot" in light of this newly implemented procedure.  (*See generally* Planet Mot.; Planet Reply; PSUMF Opp'n.)

Planet has failed, however, to meet its burden of showing why this case is moot.  "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox*, — U.S. —, 132 S. Ct. at 2287; *see also Friends of the Earth*, 528 U.S. at 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal quotation marks omitted)).  "But voluntary cessation can yield mootness if a '**stringent**' standard is met:  'A case might become moot if subsequent events make it **absolutely clear** that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Rosebrock*, 745 F.3d at 971 (emphasis added) (quoting *Friends of the Earth*, 528 U.S. at 189).

Although courts "presume that a government entity is acting in good faith when it changes its policy . . . when the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again."  *Id.* (internal citations omitted).  This is because "[a] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision." *Id.* (quoting *Coral Constr. Co.*, 941 F.2d at 928 (9th Cir. 1991)).  The Ninth Circuit has indicated that consideration of the following five factors may indicate whether mootness is more likely:

> (1) the policy change is evidenced by language that is "broad in scope and unequivocal in tone;" (2) the policy change fully "addresses all of the objectionable measures that [the Government] officials took against the plaintiffs in th[e] case;" (3) "th[e] case [in question] was the catalyst for the agency's adoption of the new policy;" (4) the policy has been in place for a long time when we consider mootness; and (5) "since [the policy's] implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff[.]"

*Id.* at 972 (internal citations omitted).  "On the other hand, [courts] are less inclined to find mootness where the 'new policy . . . could easily be abandoned or altered in the future."  *Id.* (quoting *Bell*, 709 F.3d at 901).  "Ultimately, the question remains whether the party asserting

## CIVIL MINUTES - GENERAL

**CASE NO.:** <u>CV 11-08083 SJO (FFMx)</u>          **DATE:** <u>May 26, 2016</u>

mootness 'has met its heavy burden of proving that the challenged conduct cannot reasonably be expected to recur.'" *Id.* (quoting *White*, 227 F.3d at 1243-44).

In this case, Planet has failed to meet its "heavy burden" of demonstrating that its voluntary change in policy renders this case moot. As a threshold matter, the question the Court has been asked to resolve—whether the First Amendment permits VSC to "withhold[ ] newly filed unlimited complaints from the public until they have been fully processed, which sometimes may take days or weeks," *Planet I*, 750 F.3d at 779—is still squarely at issue given the recent affirmation by both Planet and Ms. Kanatzar that neither CNS nor any other member of the press or public are entitled to see a new complaint "until it is processed." (PSUMF ¶¶ 31-33; Planet Dep. Tr. 80:10-81:9, 84:11-23; Kanatzar Dep. Tr. 140:1-6.) Thus, the Scanning Policy does not "fully 'address all of the objectionable measures that [VSC] officials took against [CNS] in th[is] case.'" *Rosebrock*, 745 F.3d at 972.

Furthermore, Planet does not contend that VSC's Scanning Policy, which was not enacted pursuant to any statute or regulation, cannot "easily be abandoned or altered in the future," and CNS has submitted evidence that VSC is contemplating switching to an e-filing system in the not-too-distant future. (*See* Req. for Judicial Notice in Supp. CNS Reply, Ex. A.)[13] "[A] case should not be considered moot if the defendant voluntarily ceases the allegedly improper behavior in response to a suit, but is free to return to it at any time." *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994). Given the "suspicious" timing of VSC's adoption of the Scanning Policy, *McCormack v. Herzog*, 788 F.3d 1017, 1023-25 (9th Cir. 2015)—i.e., after receiving an adverse ruling from the Ninth Circuit in *Planet I*—undercuts the likelihood that Planet can "show that it is 'absolutely clear' that [he] 'could not reasonably be expected' to revoke the exception," *Butler v. WinCo Foods*, 613 Fed. App'x 584, 585 (9th Cir. 2015).

In addition, the Scanning Policy has been in place for less than two years, making the policy far less "entrenched" than the five-and-a-half year old policy at issue in *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000). Furthermore, although Planet has testified that he has no intention of changing the Scanning Policy, there is no rule of law preventing him from making changes, and Planet has even testified that he would stop scanning complaints on account of e-filing if it were a "better process." (PSUMF ¶¶ 118, 121.)

---

[13] The Court takes judicial notice of the Judicial Council of California's April 2014 report titled "Trial Court E-Filing Survey and Findings Report" pursuant to Federal Rule of Evidence 201(b), for the Court does not find this report, which is posed on the California Courts website, to be "subject to reasonable dispute" given it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 11-08083 SJO (FFMx)**          **DATE:**  **May 26, 2016**

CNS also submits that certain access problems persist even under this new policy.  In particular, CNS contends that Planet's refusal to scan exhibits attached to the complaints runs afoul of the notion that "[i]f a complaint is a judicial record, then it follows that attached exhibits must also be treated as judicial records."  *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Finally, the language of the Scanning Policy is neither "broad in scope [nor] unequivocal in tone," for the policy neither acknowledges a First Amendment right of timely access to complaints once received nor prohibits VSC staff from denying CNS or other members of the public timely access to the complaints and their exhibits.   (PSUMF ¶ 115.)  Instead, the Scanning Policy states that scanned copies "typically will be available for electronic viewing on the same day."  (PSUMF ¶ 115.)

On balance, the Court concludes that Planet has not met the "heavy burden" of establishing the mootness of this case.  The Court now turns to the merits of Planet's stated justifications for his access policies.

          ii.    <u>Planet Has Not Shown that the Undisputed Delays Resulting</u>
                   <u>from Processing Are "Essential to Preserve Higher Values"</u>

Although it is difficult for the Court to glean Planet's justifications for the delays resulting from processing given his decision not to address the merits of this former policy, the deposition transcripts of Planet and Ms. Kanatzar provide some guidance as to their reasoning.

During his deposition, Planet testified that VSC did not allow CNS or other members of the public access to new civil complaints until they are processed for the following reasons: (1) to ensure that the Court respects the privacy of litigants and third parties by removing confidential information, such as material in fee waivers; (2) to ensure proper accounting protocols are followed; and (3) to ensure that information is correctly entered into CCMS, which may require QC procedures.  (*See* Planet Dep. Tr. 116-120.)  During her deposition, Ms. Kanatzar, when asked whether anyone at VSC considered allowing CNS to review newly filed complaints prior to processing, responded that she "would not have allowed [her] staff to do that" because, in her view, a document is "not a complete and accurate court record until [VSC has] processed it and put it in [their] case management system."  (Kanatzar Dep. Tr. 112:13-23.)  In particular, Ms. Kanatzar testified that VSC "ha[s] a public trust and confidence that [it] needs to maintain," which involves "maintaining their privacy . . . handling their documents appropriately," and ensuring that "any fees that are included with their document gets attached accordingly."  (Kanatzar Dep. Tr. 112:23-113:3.)  Later in the deposition, Ms. Kanatzar reiterated the reasons she believed that the public should not view complaints until they are processed:  "Needs to be accurate.  There's private information.  We need to maintain the integrity of the case file.  There's a lot of information in those cases that the public should not be viewing," such as "[f]ew [sic] waiver information,

### CIVIL MINUTES - GENERAL

**CASE NO.:**  **CV 11-08083 SJO (FFMx)**          **DATE:**  **May 26, 2016**

financial status . . . social security numbers . . . addresses, et cetera, that the public would not want the general public having access to."  (Kanatzar Dep. Tr. 140:3-25.)

From this testimony, the Court understands that Planet and Kanatzar believed that, prior to implementing the Scanning Policy, processing complaints prior to making them publicly available was necessary for the following reasons:  (1) to protect the confidentiality of those filing complaints and third parties; (2) to ensure information is accurately input into CCMS, which might require the use of QC review protocols; (3) to ensure that proper accounting procedures are followed—i.e., that VSC keeps track of filing fees attached to complaints; and (4) to "maintain the integrity of the case file."

The Court finds the stated reasons do not pass constitutional muster.  With respect to the "confidentiality" concern, California Rule of Court 1.20(b) provides that it is the **filer's** sole responsibility to exclude or redact private information from publicly filed documents.  *See* Cal. R. 1.20(b).  In any event, VSC generally does not redact information from new complaints before filing them, and Ms. Kanatzar testified that for civil matters, any such private information is contained in fee waiver applications rather than in complaints or their exhibits. (PSUMF ¶¶ 87-88.) Moreover, if the potential confidentiality of material contained in the complaint itself were a genuine concern "essential to preserve higher values," then it would make little sense for VSC as part of its Scanning Policy to not review the complaints for such sensitive information prior to scanning them; this, however, is precisely what VSC currently does. (PSUMF ¶ 89.)  To the extent VSC is concerned about confidential information contained in exhibits, other than fee waiver applications, being made public, Planet points to no evidence that VSC reviews exhibits for such information prior to making them public.  Regardless, as noted above, it would be the filer's responsibility pursuant to California Rule of Court 1.20(b) to redact such information.

Planet's expressed concerns regarding the accuracy of information input into CCMS and the following of accounting procedures, while superficially appealing, are upon closer inspection illusory.  With respect to accuracy, Planet has not pointed to **any** evidence that complaints scanned prior to processing using the Scanning Procedure resulted in accurate input of information into CCMS, undercutting his theory that processing prior to making complaints available is necessary.  Similarly, with respect to accounting, Planet testified that he could not think of an example of a situation in which there was an accounting problem associated with providing access to a newly received civil complaint prior to processing.  (PSUMF ¶ 95.) Moreover, it is undisputed that in many courts in which reporters view complaints the same day they are submitted for filing, checks are separated from the complaints to which they pertain before the reporter sees the complaints.  (PSUMF ¶ 97.)

Finally, the Court is not persuaded that Planet and Ms. Kanetzar's argument regarding maintaining the "integrity of the case file" is an "overriding [governmental] interest" warranting delaying access to newly filed complaints.  As with Planet's accuracy and accounting arguments, Planet testified that he could not think of an example of a situation in which providing a reporter with access to a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**

newly filed complaint prior to processing resulted in the loss, destruction, mutilation, or any other potential "loss of integrity" that might result from making such complaints available.  (PSUMF ¶ 102.)  Planet's argument that this fact "only indicates that VSC's procedures and preemptive measures have been successful," (PSUMF Opp'n ¶ 102), does not belie the conclusion that "ensuring the integrity" of these filings by first processing them in the manner in which VSC did does not comport with the First Amendment.

In short, Planet has not met his burden of proving that delays brought on by VSC's processing of newly filed complaints and their associated documents prior to making such complaints available to the public and press—which indisputably resulted in CNS not being afforded "timely access" to such complaints—is the result of "overriding [governmental] interest" or that such delays are "essential to preserve higher values."  *Planet I*, 750 F.3d at 793 n.9 (quoting *Leigh*, 677 F.3d at 898).

           iii.        Planet Has Not Demonstrated VSC's Processing Policy Was "Narrowly Tailored to Serve a Significant Governmental Interest" or "Left Open Ample Alternative Channels for Communication of the Information"

The Ninth Circuit in *Planet I* held that "[t]he delay in making the complaints available may also be analogous to a permissible 'reasonable restriction[ ] on the time, place, or manner of protected speech," which is commonly referred to as a "reasonable TPM restriction."  *Planet I*, 750 F.3d at 793 n.9 (quoting *Ward*, 491 U.S. at 791).  In order for Planet to demonstrate that his processing procedure constitutes a reasonable TPM restriction, he must demonstrate that VSC's processing policy was "justified without reference to the content of the regulated speech, that [the policy is] narrowly tailored to serve a significant governmental interest, and that [the policy] leave[s] open ample alternative channels for communication of the information."  *Ward*, 491 U.S. at 791 (quoting *Clark*, 461 U.S. at 177).  The parties do not appear to dispute that VSC's processing policy is content-neutral, and therefore the Court only considers the latter two requirements.

First, for largely the same reasons provided above, the Court does not find that VSC's processing policy is "narrowly tailored to serve a significant governmental interest."  As a backdrop, the Court previously determined that Planet has not met his burden of proving that VSC's processing policy neither is the result of protecting some "overriding [governmental] interest" nor is "essential to preserve higher values."  *See* Section II(B)(3)(a)(ii), *supra*.  The Court likewise finds that Planet has not demonstrated why his four expressed concerns are "significant" in light of the evidentiary record suggesting otherwise.  Moreover, with respect to "narrow tailoring," the Court concludes that a number of alternative policies and procedures—many of which were contemplated by Planet and his staff, but were ultimately rejected—would have provided improved access for the public and the press.  The Court considers each of these potential alternatives in turn.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 11-08083 SJO (FFMx)          DATE:  May 26, 2016**

Perhaps the most simple alternative would have been for VSC to create copies of newly filed complaints and make them available for public viewing.  In fact, VSC considered this exact policy, as evidenced by an email from VSC's Records Department manager to its Civil Department manager on April 9, 2014.  (PSUMF ¶ 83 ["Can we try having Ina make copies of Complaints for cases that she doesn't locate to the Media Bin and put copies in the Media Bin?"].)  VSC's Civil Department manager responded that she would "get back with you," but this suggestion was never adopted.  (PSUMF ¶ 83.)  Although it is not clear why this policy was never put into place, it is Planet's burden to demonstrate why such an "easily available alternative" would not have been feasible.  *See Food Not Bombs*, 450 F.3d at 1041.  The Court notes, however, that to the extent Planet might argue that such a practice would have been cost-prohibitive or unduly labor intensive, he has not quantified the cost of copying the full versions of unlimited civil complaints, nor has he detailed the additional labor that would have been required to complete such copying.  (*See* PSUMF ¶ 111.)  Absent such evidence, the Court cannot "articulate facts demonstrating an administrative burden sufficient to deny access."  *Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1295 (9th Cir. 1986); *see also In re Associated Press*, 172 Fed. App'x 1, 5-6 (4th Cir. 2006) ("We do not doubt that the administrative burdens facing the district court are enormous. . . .  However, Petitioners maintain—and we agree—that there are ways to ease the incremental administrative burdens that would arise from accommodating their First Amendment right of access, such as providing access to one copy of an exhibit—either through the parties or through the court—and requiring the media to make additional copies at their own expense.").

Relatedly, VSC's policy regarding complaints routed to judges is also deficient, and highlights another reason the processing policy was not "narrowly tailored."  During her deposition, Ms. Kanatzar discussed VSC's procedure for immediately routing complaints to judges, such as those with fee waivers that needed to be approved, ex parte requests, writs, and other categories of documents on a list that "need[s] to be reviewed immediately," available to the public.  (*See* Kanatzar Dep. Tr. 117:10-19.)  At some point in 2012, VSC modified its judicial review procedure (1) to provide judges with routing slips to enable their secretaries to send reviewed documents directly to the media bin; and (2) to make a copy of the face page of such complaints so that the media could "make note" of these documents that will eventually make it to the media bin.  (Kanatzar Dep. Tr.   121:8-123:9.)   When asked whether VSC considered copying entire complaints instead of only the face page, Mr. Kanatzar responded that although VSC "considered it," given "the fact that [they] were in the middle of a major budget crisis, [they] did not want to go to the expense of making copies of all of those documents if [they] didn't need to, especially not knowing what cases the reporter would be interested in.  [They] waited for her to tell [them] what interested her."  (Kanatzar Dep. Tr. 128:6-15.)  As a preliminary matter, Planet has not indicated why this face-page-only policy was not put in place for every newly filed civil complaint, rather than solely for those routed to judicial officers.  Furthermore, Planet has not provided documentation regarding the additional cost that VSC would be required to bear were it to copy entire complaints instead of only the first page.  (PSUMF ¶ 111.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**


**CASE NO.:   CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**


There are, of course, measures that VSC could have taken to obtain excess hard copies at no additional cost to the court.  In fact, VSC discussed, but ultimately rejected, one such idea.  It is undisputed that VSC at least as early as April 9, 2014 discussed implementing "a local rule requiring the submitting party to submit an additional copy" that could be made available for review by the public and press.  (PSUMF ¶ 79.)  According to Planet, however, "VSC made the commonsense decision not to impose upon each and every litigant the burden and cost of submitting an extra copy of filed complaints, which would inure only to the benefit of CNS, a for-profit corporation, which is generally the only media outlet that requests access to civil complaints filed at VSC."  (PSUMF Opp'n ¶ 81.)  The Court is not persuaded that VSC's decision sounds in "commonsense," particularly given the Court's obligation to "consider other mechanisms to provide the public with access," such as "requiring [litigants] to file duplicates" of their pleadings.  *Valley Broadcasting*, 798 F.2d at 1295.  At the very least, the Court concludes that Planet's statement on this point is insufficient to demonstrate that VSC's processing policy was "narrowly tailored" given VSC's recognition of such an alternative.

Nor does the Court find that the processing policy "leave[s] open ample alternative channels for communication of the information."  The Ninth Circuit has held that "[t]o comport with the First Amendment, a permitting ordinance must provide some alternative for expression concerning fast-breaking events."  *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1047 (9th Cir. 2006).  Under VSC's processing policy, however, a CNS reporter interested in seeing a newly filed complaint that they consider "newsworthy" would be subject to the whims and turnaround times of Planet and his inferiors, who could reject such access on the departmental policy that a complaint is not a "public record" until it is "processed."  Indeed, Planet does not genuinely dispute CNS's proffered statement that "[t]here is no adequate or reliable way for reporters to view new complaints on the same day they are filed other than to obtain them from the courts at which they are filed."  (PSUMF ¶ 113.)

For the foregoing reasons, the Court concludes that Planet has failed to meet its burden of demonstrating that VSC's policy of refusing to provide the public and press access to newly filed complaints until after they are "processed" is either "essential to preserve higher values" or is "narrowly tailored to serve [a substantial governmental] interest."  Accordingly, the Court **GRANTS IN PART** the CNS Motion insofar as it asks the Court to find that Planet's policy of requiring that newly filed complaints be "processed" before providing access to such complaints violates CNS's qualified First Amendment right of timely access to newly filed complaints.  The Court **PROHIBITS** Planet, in his official capacity as Court Executive Officer and Clerk of the Ventura County Superior Court, from refusing to make newly filed unlimited civil complaints and exhibits attached thereto available until after such complaints and associated exhibits are "processed"—i.e., the performance of administrative tasks that follow the court's receipt of a new complaint—and **ORDERS** that Planet make such complaints and associated exhibits accessible by the public and press in a timely manner from the moment they are received by the court.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-08083 SJO (FFMx)</u>          **DATE:** <u>May 26, 2016</u>

      b.   <u>Although Access to Complaints Is Significantly Improved Under VSC's Scanning Policy, Certain Problems Persist</u>

In response to the Ninth Circuit's reversal of the First Dismissal Order, VSC on June 18, 2014 implemented a new policy, called the "Scanning Policy," whereby each new civil complaint, excluding exhibits and other attachments, is electronically scanned into a PDF-formatted document "prior to any processing or filing of the complaint as an official court record." (Scanning Policy.)  PDFs scanned in such a manner are then made accessible to the public for 10 days through public computer terminals in the lobby of VSC's Records Department, and paper copies may be obtained for a per-page-charge upon request.  (Scanning Policy.)

CNS contends that VSC's Scanning Policy, which permits the public and press access—although the nature of such access is disputed, as is discussed below—to newly filed complaints prior to processing, likewise runs afoul of the First Amendment for two reasons.  First, CNS argues that, contrary to Planet's insistence throughout its papers and separate statements of undisputed material facts, the scanning procedure does not allow same-day access to 97% of complaints, but instead "often provides same-day access to only half or less of the complaints because many are scanned after 3:00 p.m., when access to the public terminals ends despite the court remaining open until 4:30 or later." (Planet Reply 1-2.)  Second, CNS submits that Planet's "refusal to scan exhibits" along with the associated complaints violates the public's right of access to documents that comprise the entire "complaint."  (Planet Reply 2.)

Addressing CNS's latter contention first, the Court finds that there is a qualified right of access to exhibits attached to complaints, and that Planet has not met its burden of demonstrating why it is justified in refusing to provide access to such exhibits as part of its Scanning Policy.  Federal Rule of Civil Procedure 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion," and further states that "[a] copy of a written instrument that is an **exhibit** to a pleading **is a part of the pleading for all purposes**." Fed. R. Civ. P. 10(c) (emphasis added).  The Court therefore follows the Eleventh Circuit's reasoning in *FTC. v. AbbVie Prods. LLC* that "[i]f a complaint is a judicial record, then it follows that attached exhibits must also be treated as judicial records." 713 F.3d at 63; *see also In re Associated Press*, 172 Fed. App'x 5-6 (finding a qualified First Amendment right of access to documentary exhibits admitted into evidence and published to the jury); *Baldwin v. U.S.*, 732 F. Supp. 2d 1142, 1143-45 (D. N. Mar .I. 2010) (exhibits attached to complaints are "part of the judicial record . . . and . . . integral to the underlying cause of action," and therefore denials of access as a result of sealing must meet the "compelling reasons" test).  Moreover, the Court finds that both "experience" and "logic" weigh in favor of finding a qualified right of timely access to exhibits attached to complaints, particularly given the lack of any dispute regarding the longstanding history of courts across the nation providing CNS and other reporters to both civil complaints and the complaints' exhibits in a timely manner.  (*See* PSUMF ¶¶ 8, 9, 19.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 11-08083 SJO (FFMx)**          **DATE:  May 26, 2016**

Given the Court's conclusion that the public and press have a qualified right of timely access to both complaints and exhibits that make up part of the pleading, Planet has not met its burden of demonstrating how its affirmative decision not to scan such exhibits constitutes a reasonable TPM restriction.  For example, Planet has not provided evidence regarding the marginal cost of scanning such exhibits, or indeed argued that scanning these exhibits would result in a significant administrative burden.  Instead, Planet's employees contend that exhibits are difficult to scan "because they have the tabs" and "just don't feed into the scanner," making the process "[t]oo time consuming."  (Fetterly Decl., Ex. 8 ("Camacho Dep. Tr.") 255:17-256:7.)  Although "articulable administrative difficulties [may] warrant a denial of access" in some cases, the defendant must articulate "facts demonstrating an administrative burden sufficient to deny access," which Planet has failed to do here.  *Valley Broadcasting*, 798 F.2d at 1295.  In light of these evidentiary shortcomings, Planet's argument that "the type of summaries CNS publishes would not be informed by a complaint's exhibits, as they are most often one sentence, generalized descriptive phrases such as 'car collision'" does not persuade.  (CNS Opp'n 3 n.6.)  Accordingly, the Court **ORDERS** Planet, in his official capacity as Court Executive Officer and Clerk of the Ventura County Superior Court, to make exhibits attached to newly filed unlimited civil complaints accessible to the public and the press in a timely manner.

The extent to which complaints scanned under the Scanning Policy are made available to the public and the press presents a more difficult question, both in the factual and remedial sense.  Planet steadfastly maintains that "VSC has provided same day access to approximately 97% of the civil complaints filed since implementing the June 2014 scanning policy," far exceeding CNS's stated "goal" of 85% access.  (*See generally* PSUMF Opp'n.)  CNS contends, however, (1) that its reporter assigned to VSC "does not recall experiencing access of close to 97% of new civil complaints on the same day they are received for filing[;]" (2) that during several periods, the same reporter was unable to view a percentage of scanned documents the same day they were received anywhere near the 97% figure touted by Planet; and (3) Planet's declaration that provides the basis for his 97% figure neither takes account of the fact that viewing terminals close at 3 p.m. while the courthouse does not close until at least 4:30 p.m. nor reflects Planet's policy of "backdating" the filed date to the date a complaint is received.  (CNS's Statement of Additional Material Facts ("PSAMF") ¶¶ 46, 55, ECF No. 176; Planet Opp'n 24.)

Notwithstanding this apparently irreconcilable evidentiary dispute, its resolution is not necessary for the purpose of ruling on the parties' motions.  That is because the following two facts are undisputed:  (1) even though VSC's Records and Civil Departments close their doors to the public at 3:00 p.m., the courthouse itself remains open to the public, who can continue to file new complaints, until at least 4:30 p.m.; and (2) the Records Department requires all members of the public, including CNS's reporter, to leave once the last member of the public is helped.  (PSAMF ¶¶ 44, 53.)  Thus, depending on when the Records Department closes its doors for the day, there is a distinct possibility that complaints filed late in the day may not be viewable by the public until the next day.  Viewed in this light, the case is similar to *Ridenour v. Schwartz*, a case in which the Arizona Supreme Court, sitting en banc, held that an "administrative order [that] limit[ed] public

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 11-08083 SJO (FFMx)        **DATE:**  May 26, 2016

access to court proceedings that continue after 3:00 p.m. to those persons who are in the courthouse before 3:00 p.m" unconstitutionally infringed on the public's right of access to observe and attend court proceedings.  179 Ariz. 1, 875 P.2d 1306, 1307 (**1994**) (en banc).  Although the administrative order was designed to "reduce the cost of providing security at the courthouse and to permit the clerical and administrative to do work it cannot do with a reduced staff while the public also has access," the Arizona Supreme Court held that "[i]f less drastic alternatives were available to implement the court's duty to exercise good faith efforts during the county's financial crisis, the presiding judge was compelled to have opted for those less drastic alternatives."  *Id.* at 1307, 1309.  In so ruling, the Arizona Supreme Court cited the *Globe Newspaper* case for the proposition that an order closing the court must be narrowly tailored to serve a compelling government interest.  *Id.* at 1309.

Planet has not provided any reason, much less one that is "compelling," why VSC should be permitted to preclude members of the public and the press from viewing newly filed complaints that happen to be scanned after the Records Department—the sole area in which one can read such scanned documents—shuts its doors.  Accordingly, the Court **ORDERS** Planet, in his official capacity as Court Executive Officer and Clerk of the Ventura County Superior Court, to make copies of newly filed unlimited civil complaints and their associated exhibits, regardless whether such documents are scanned, e-filed, or made viewable in any other format, available to be viewed by the public and the press in a timely manner.

III.    RULING

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the CNS Motion and **DENIES** the Planet Motion.  Plaintiff Courthouse News Service shall file a proposed judgment consistent with this Order that addresses the claims in this action within fourteen (14) days of the issuance of this Order.

IT IS SO ORDERED.